### ARTHUR KAUFMAN *vs.* IRENE FISTEL.

Suffolk.     October 5, 1948. — December 2, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Housing. Price Control. Landlord and Tenant*, Federal control. *Words*, "Customarily rented or occupied on a seasonal basis."

Under a rent regulation issued pursuant to the Federal emergency price control act of 1942 and providing in one section that in applicable circumstances the maximum rent should be "the first rent" of the housing accommodations after the effective date of the regulation, in another section that the price administrator might "order a decrease of the maximum rent otherwise allowable" on the ground that the "rent on the date determining the maximum rent was substantially

higher than at other times of year by reason of seasonal demand, or seasonal variations in the rent," and in a third section that the "regulation does not apply to" certain summer resort housing accommodations during the summer season, there was no merit in a contention by a landlord that the maximum rent for summer resort housing accommodations first rented, after the effective date of the regulation, for a summer season and thereafter rented again at a substantially lower rate for the ensuing fall, winter, and spring seasons, was, as to the off-seasons, the summer season rate subject to the power of the administrator to order a decrease rather than the amount of the first payment at the off-season rate: the rate for the summer season, when the premises were exempt from control, must be disregarded.

The mere fact, that summer resort housing accommodations rented on a seasonal basis prior to and during the summer season of 1945 were leased beginning in September, 1945, for the ensuing fall, winter, and spring seasons, did not prevent their being within a provision of a rent regulation, issued under the Federal emergency price control act of 1942, exempting from control under the regulation during the summer season ending September 30, 1946, certain summer resort housing accommodations "customarily rented . . . on a seasonal basis prior to October 1, 1945"; and, in an action by the tenant against the landlord based on payments allegedly in excess of the maximum rent during the term of such lease and also for the summer season of 1946, for which also the tenant hired the housing accommodations, it was error to refuse a ruling requested by the defendant that the housing accommodations were "exempt from the rent regulation" during the summer season of 1946 and to rule that "beginning with the month of September, 1945," the housing accommodations were "subject to" the regulation.

TORT OR CONTRACT. Writ in the East Boston District Court dated September 18, 1946.

Among the allegations of the declaration were the following: "4. During the month of September, 1945, the defendant rented to the plaintiff the said housing accommodations [described in the opinion] furnished for the sum of . . . $75 monthly and thus came within the regulation which became effective November 1, 1942 . . . . 6. From about January 1, 1946, through June 25, 1946, the defendant demanded and received from the plaintiff as tenant in said housing accommodation the sum of . . . $85 per month as rent for the use and occupancy thereof. Also, on or about June 25, 1946, the defendant further demanded and received from the plaintiff as tenant in said housing accommodations the sum of . . . $700 for the rental period of June 25, 1946, to Labor Day (September 2, 1946) as

rent for the use and occupancy thereof. 7. The defendant has failed and refused to refund to the said plaintiff the sum of . . . $510 collected in overcharges from said plaintiff. Wherefore the plaintiff is entitled to . . . $1,530, being three times the aggregate overcharge to said plaintiff and reasonable attorney fees and court costs."

The action was heard by *Loschi*, J.

*C. J. Moynihan*, for the defendant.

No argument nor brief for the plaintiff.

WILKINS, J. This action of contract by a tenant against a landlord is to recover treble the amount of payments allegedly in excess of the maximum rent prescribed by the Office of Price Administration. Emergency price control act of 1942, c. 26, Title II, § 205 (e) (Act of January 30, 1942, 56 U. S. Sts. at Large, 23, 34), as amended by stabilization extension act of 1944, c. 325, Title I, § 108 (b) (Act of June 30, 1944, 58 U. S. Sts. at Large, 632, 640), and by Act of July 25, 1946, c. 671, § 12 (60 U. S. Sts. at Large, 664, 676). The judge found for the plaintiff, the Appellate Division dismissed a report, and the defendant appealed.

The premises, an eight-room furnished flat in that part of Winthrop known as Winthrop Beach, are located in a "resort community," and had been owned by the defendant for about seventeen years. About ten years ago the defendant rented the premises to tenants for the summer, but thereafter she occupied them herself and rented rooms for the summer. On March 1, 1942, the premises were occupied by the defendant and not rented, and they were not rented either during the preceding two months or between March 1, 1942, and November 1, 1942. The first rental after March 1, 1942, was for the summer of 1945 to tenants other than the plaintiff who paid $800 for the period from June 25 to Labor Day. In September, 1945, the defendant leased the premises to the plaintiff for $75 a month for the period from September 6, 1945, to June 25, 1946. During that fall the defendant agreed to change the method of heating from coal to oil, and the plaintiff agreed to pay an additional $10 monthly for ten months. From January to June, 1946, inclusive, the plaintiff paid $85 monthly. In June, 1946,

the parties made an agreement for the summer season of 1946 pursuant to which the plaintiff paid the defendant $700 for the period from June 25 to Labor Day. The plaintiff sublet one room for $150 for part of the season. In September, 1946, the defendant filed with the Office of Price Administration a registration statement reciting that the maximum legal rent was $75 monthly.

The underlying question is what was the maximum rent permissible under the rent regulation for housing issued by the price administrator. See emergency price control act of 1942, Title II, § 201 (d) (56 U. S. Sts. at Large, 23, 29). In the area the effective date of regulation was November 1, 1942, and the maximum rent date was March 1, 1942. Rent regulation, § 1 (a). 10 Fed. Reg. 13528, 13540. The regulation, § 4 (e) (3), provided that the maximum rent for "housing accommodations not rented at any time during the two months ending on the maximum rent date nor between that date and the effective date, [should be] the first rent for such accommodations after . . . the effective date . . .." 10 Fed. Reg. 13529. And the judge rightly so ruled at the defendant's request.

The regulation also contained the following: § 1. "(b) Housing to which this regulation does not apply. This regulation does not apply to the following: . . . (6) Resort housing — (i) Exemption — (a) Summer resort housing. Housing accommodations located in a resort community and customarily rented or occupied on a seasonal basis prior to October 1, 1945, which were not rented during any portion of the period beginning on November 1, 1943, and ending on February 29, 1944. This exemption shall be effective only from June 1, 1946 to September 30, 1946, inclusive." 11 Fed. Reg. 12055. The defendant requested the judge to rule: "6. The housing accommodations rented by the defendant to the plaintiff were exempt from the rent regulation for housing from June 1, 1946, to September 30, 1946, if the court finds that the accommodations were located in a resort community and customarily rented on a seasonal basis prior to October 1, 1945, and were not rented during any portion of the period beginning on November 1, 1943,

and ending on February 29, 1944. See rent regulation for housing, § 1 (b) (6)." In denying this, the judge stated, "I find that the accommodations rented by the defendant to the plaintiff were on a seasonal basis up to September of 1945 and that beginning with the month of September, 1945, the said accommodations were subject to the rent regulations for housing § 1 (a)."

The defendant contends that, as the premises were not rented on March 1, 1942, or during the two months ending on that date, or between that date and November 1, 1942, the first rent after November 1, 1942, which was $800 for the summer of 1945, necessarily became the maximum rent. On that theory, the maximum rent, she argues, was approximately $330 a month, and any reduction was for the price administrator under § 5 (c) (6).[1] With this we do not agree because the premises were entirely exempt during that summer under the rent regulation, § 1 (b), as it then stood, which contained: "This regulation does not apply to the following: . . . (6) Resort housing — (i) Exemption. Housing accommodations located in a resort community and customarily rented or occupied on a seasonal basis prior to October 1, 1944, which were not rented during any portion of the period beginning on November 1, 1943 and ending on February 29, 1944. . . . This exemption shall be effective only from June 1, 1945 to September 30, 1945, inclusive." 10 Fed. Reg. 13528. The judge found that the premises were "on a seasonal basis up to September of 1945." That conclusion was consistent with the other findings, and, we think, gave a correct effect to the resort property exemption. The evident purpose of the exemption was to encourage owners of property in a "resort community" to let it during the balance of the year without

---

[1] Section 5. "(c) Grounds for decrease of maximum rent. The Administrator at any time, on his own initiative or on application of the tenant, may order a decrease of the maximum rent otherwise allowable only on the grounds that: . . . (6) Seasonal rent. The rent on the date determining the maximum rent was substantially higher than at other times of year by reason of seasonal demand, or seasonal variations in the rent, for such housing accommodations. In such cases the Administrator's order may if he deems it advisable provide for different maximum rents for different periods of the calendar year." 10 Fed. Reg. 13532.

becoming tied to a year round maximum rent limited by what tenants paid during the off-season. As applied to the premises, "customarily rented or occupied on a seasonal basis" means not customarily rented on an annual basis.

The first payment of nonseasonal rent was $75 monthly for the period beginning September 6, 1945, and ending June 25, 1946. It seems clear that, apart from the summer season, the maximum rent was fixed by the initial payment of $75. Accordingly, the $60 paid by reason of the oil burner installation was in violation of the regulation. *Thierry* v. *Gilbert*, 147 Fed. (2d) 603 (C. C. A. 1). But the finding for the plaintiff was in the sum of $525, and must have been based at least in part on the summer payment of 1946. This, however, we think could not rightly be done. The implied finding that the premises ceased to be "on a seasonal basis" beginning September, 1945, if intended to embrace the summer of 1946, was not consistent with the other findings, one of which was that in that month the premises were leased for the period from September 6, 1945, to June 25, 1946. The ending of the 1945 season on Labor Day and the making of the off-season lease to begin September 6 did not prevent the premises from being "customarily rented or occupied on a seasonal basis prior to October 1, 1945." The judge's statement that beginning September, 1945, the premises "were subject to" the rent regulation was a ruling of law and was erroneous. The defendant's sixth request for a ruling should have been granted.

*Order dismissing report reversed.*
*New trial ordered.*