WILLIAM F. HOGAN *vs.* MARION E. COLEMAN.

Norfolk. January 3, 1951. — February 6, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Landlord and Tenant*, Rent, Federal control. *Price Control. Housing. Limitations, Statute of. Practice, Civil*, Requests, rulings and instructions. *Words*, "Rent."

On the record, forty requests for rulings filed by one of the parties in an action in a District Court were not unreasonably numerous, and a refusal of the judge to act upon them must be treated as a denial of them.

The "housing accommodations" for which a maximum rent was fixed by the Federal emergency price control act of 1942 in the case of an apartment let in 1941 before the maximum rent date and subsequently registered under the act by the landlord by a registration statement silent as to furniture, included furniture of the landlord located in the apartment and used by the tenant with the landlord's permission from the time of the letting until a time long after the maximum rent date, so that payments by the tenant to the landlord for the use of the furniture commencing at such later time were not "something other than rent" arising out of "a relationship not regulated by" the act, but represented an illegal increase in rent above the fixed maximum rent.

In an action under the Federal emergency price control act of 1942 and housing and rent act of 1947 to recover treble damages, an attorney's fee, and costs by reason of alleged overcharges of rent by the defendant as landlord of the plaintiff, it was correct to rule that the plaintiff could not recover for overpayments made more than one year before the date of the writ.

CONTRACT OR TORT. Writ in the District Court of East Norfolk dated October 22, 1948.

The action was heard by *Halloran*, J.

*A. E. Lamb*, for the plaintiff.

*A. I. Burgess*, for the defendant, submitted a brief.

SPALDING, J. The plaintiff brought this action of contract or tort under the emergency price control act of 1942 (56 U. S. Sts. at Large, 23 et seq.) and the housing and rent act of 1947 (61 U. S. Sts. at Large, 193 et seq.) to recover treble damages, an attorney's fee and costs because of alleged overcharges of rent by the defendant for a period extending from July, 1945, to September, 1948. The judge found for the defendant, the Appellate Division dismissed the report, and the plaintiff appealed.

At the trial there was evidence of the following facts. At all times here material the defendant owned a two family house in Quincy. In November, 1941, the plaintiff became the tenant of one of the apartments at an agreed rent of $30 a month, and at the same time an arrangement was made whereby the defendant occupied one of the rooms of the apartment. At the time the plaintiff moved in there were several articles of the defendant's furniture in the apartment which the defendant told the plaintiff's wife they could use. "On December 19, 1942, the defendant filed a registration statement with the area rent office for the seven room housing accommodation in which it did not appear . . . whether or not furniture was to be supplied as a part of the housing accommodation." The maximum rent stated therein was $30 a month. In 1943 the defendant ceased to board and room with the plaintiff and moved out, instructing the plaintiff thereafter to pay the rent to the defendant's brother. At that time the plaintiff purchased some of the

articles of furniture, but the defendant left the balance of it in the apartment, telling the plaintiff's wife they could use it. In May, 1945, the defendant discussed an increase in the rent with the plaintiff's wife without making any mention of a charge for the use of the defendant's furniture. The result of this discussion was that commencing in July, 1945, the plaintiff thereafter paid $30 a month to the defendant's brother, and $7 a month was paid by the plaintiff's wife directly to the defendant. It was the plaintiff's contention that the latter amount represented an increase in rent whereas the defendant contended it was a collateral agreement for the use of the furniture. No increase in the maximum rent was ever allowed by the proper authorities. The case was tried on the footing that the plaintiff was in possession prior to the maximum rent date and that the apartment was controlled "housing accommodations" within the purview of the Federal housing and rent act.

At the close of the evidence the plaintiff presented numerous requests for rulings. The judge dealt with these as follows: "Inasmuch as plaintiff has filed forty requests for rulings, they have not been acted upon." The plaintiff claimed a report to this refusal to act, to the granting of certain requests for rulings presented by the defendant, and to the judge's "finding" that the $7 a month was paid to the defendant "for something other than rent" and that the maximum legal "rent of the premises" was $30 a month.

Ordinarily the failure of a judge to pass on requests for rulings is treated as an implied denial of them. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 17. *Kravetz* v. *Lipofsky,* 294 Mass. 80, 84. *Mitchell* v. *Silverstein,* 323 Mass. 239, 240–241. The trial judge evidently was of opinion that the plaintiff's requests, because so numerous, had no standing. The purpose of requests in a case tried without a jury is to separate law from fact by requiring the judge to "state the rules of law adopted by him for his guidance as a trier of fact in order that the right of review thereof may be preserved." *Adamaitis* v. *Metropolitan Life Ins. Co.* 295 Mass. 215, 219. *Perry* v. *Hanover,*

314 Mass. 167, 173. *Biggs* v. *Densmore,* 323 Mass. 106, 108.
They were not intended as a device to confound or ensnare
the trial judge. Counsel ought not to be permitted to over-
whelm the judge with an avalanche of requests so that in
working his way out of the debris he will be lured into com-
mitting reversible error. To sanction such a practice would
place an intolerable burden on the trial judge and would
convert the trial of a case into a game in which adroitness
and cunning would triumph. To paraphrase a statement
made by this court concerning interrogatories, "[Requests]
should not be suffered to become a training field for the
saving of exceptions possessing only a theoretical merit,
having no relation to the practical administration of jus-
tice." *Cutter* v. *Cooper,* 234 Mass. 307, 316. We have no
doubt that where the number of requests is palpably in
excess of the number legitimately needed in a case the trial
judge has the power either to order them stricken from the
files, or to require a party to reduce them to a reasonable
number or risk the loss of any rights under them. *Goldman*
v. *Ashkins,* 266 Mass. 374, 379. As we said in that case,
"No court can be compelled to go through a mass of undi-
gested material presented by a party in order to find a little
that is germane to the case. A great bulk of chaff need not
be searched to find here and there a grain of wheat."

An examination of the plaintiff's requests leads us to the
conclusion that, although they might well have been less in
number, they cannot be said to be unreasonably excessive.
Many of them were germane to the issues before the court
and ought to have been dealt with. Accordingly the plain-
tiff's requests must be treated as having been denied.

One of the plaintiff's requests (the eleventh) was to the
effect that, it having been admitted by the defendant (as
was the fact) that from November 1, 1941, to June, 1945,
the plaintiff had the use of the articles of furniture in his
occupancy of the dwelling, the judge must rule that the
furniture was a part of the "housing accommodations"
furnished by the defendant. The judge granted the defend-
ant's seventh request that "On all the evidence the payment

by the plaintiff or his wife of the $7 each month arose out of a relationship not regulated by the . . . emergency price control act of 1942 or . . . [by] the rent control acts . . . in force." The granting of this request and the denial of the plaintiff's request were error.

In the emergency price control act of 1942 the word "rent" is defined as "the consideration demanded or received in connection with the use or occupancy or the transfer of a lease of any *housing accommodations*"[1] (56 U. S. Sts. at Large, 23, 36). The term "housing accommodations" is defined as "any building, structure, or part thereof . . . or any other real or personal property rented or offered for rent for living or dwelling purposes . . . together with all privileges, services, furnishings, *furniture*, and facilities connected with the use or occupancy of such property"[1] (56 U. S. Sts. at Large, 23, 36). The same definitions appear in the housing and rent act of 1947 (61 U. S. Sts. at Large, 193, 196–197).

Thus the unit for which the $30 rent ceiling was fixed was not the premises but the housing accommodations as defined in the acts. As was said of a similar statute in *Delsnider* v. *Gould*, 154 Fed. (2d) 844 (C. A. D. C.), at page 847, "The purpose is obvious. If the ceiling had been fixed for the premises alone, landlords could remove with complete immunity the accessory personal property, facilities and services to the detriment of tenants. The result would have been nullification of rent control." The statutory definition of housing accommodations does not distinguish between services which were gratuitously provided or to which the landlord assented at the maximum rent date and those which the tenant had a legal right to demand as part of his tenancy. *Johnson* v. *Bowles*, 145 Fed. (2d) 166, 167–168 (Emerg. App.).

There was also error in the so called finding of the trial judge that the agreement to pay the additional $7 a month was "for something other than rent." This was in effect a

---

[1] Emphasis supplied.

ruling of law. See *Kaufman* v. *Fistel,* 323 Mass. 422, 427. The following statement by the court in *Woods* v. *Dodge,* 170 Fed. (2d) 761 (C. A. 1), with respect to a similar finding is pertinent here: ". . . we cannot adopt . . . [the] theory that the agreement . . . was one with respect to personal property 'in no way tied in with or connected with the rental of the real property,' made by a person who happened to be a landlord with a person who happened to be his tenant, and hence that it was an agreement not subject to the provisions of the Emergency Price Control Act of 1942, as amended" (page 763).

From the foregoing it is apparent that the judge failed to apply correct principles of law in deciding the case. Since the challenged rulings related to important, if not the most important, issues in the case, the error was prejudicial to the plaintiff.

The defendant seeks to support the decision below on the ground that it is apparent from various rulings made at the trial that the finding of the judge imported a finding that the agreement as to the $7 was made with the plaintiff's wife and not the plaintiff. Thus, it is argued, the alleged overcharges did not arise out of the relationship of landlord and tenant. We do not so construe the judge's finding; nor was such a finding required by the evidence.

The plaintiff claimed a report to the judge's allowance of a request for a ruling that the plaintiff could not recover for payments allegedly made prior to one year before the date of the writ. This ruling was correct. In the housing and rent act of 1947 it is provided, "Any person who . . . accepts, or receives any payment of rent in excess of the maximum rent prescribed . . . shall be liable to the person from whom he . . . accepts, or receives such payment, for reasonable attorney's fees . . . plus liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments . . . accepted, or received exceed the maximum rent which could lawfully be . . . accepted, or received, whichever in either case may be the greater amount: Provided, That the amount of such

liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation.  Suit to recover such amount may be brought . . . within one year after the date of such violation.  For the purpose of determining the amount of liquidated damages . . . all violations alleged in such action which were committed by the defendant with respect to the plaintiff prior to the bringing of action shall be deemed to constitute one violation, and the amount . . . accepted, or received in connection with such one violation shall be deemed to be the aggregate amount . . . accepted, or received in connection with all violations.  A judgment in an action under this section shall be a bar to a recovery under this section in any other action against the same defendant on account of any violation with respect to the same plaintiff prior to the institution of the action in which such judgment was rendered" (61 U. S. Sts. at Large, 193, 199).  There has always been a one year provision in the statutes (56 U. S. Sts. at Large, 23, 34).

It is the plaintiff's contention that the effect of the statute quoted above, properly construed, is that if the plaintiff brings his action within one year of the last violation he is entitled to recover on account of all overcharges made while any of the various rent control acts and amendments thereto have been in effect.  However plausible this argument might seem, it has uniformly been held under the acts both of 1942 and of 1947 that the one year provision is a limitation not only on the remedy but also on the right so that damages may be recovered only on account of violations occurring within the year next preceding the commencement of the action.  *Young* v. *Margiotta,* 136 Conn. 429, 432.  *Matheny* v. *Porter,* 158 Fed. (2d) 478 (C. C. A. 10).  *Meyercheck* v. *Givens,* 180 Fed. (2d) 221, 223, 224, (C. A. 7).  *Moore* v. *United States,* 182 Fed. (2d) 332, 336 (C. A. 5).  *Bowles* v. *American Distilling Co. Inc.* 62 Fed. Sup. 20, 22 (D. C. S. D. N. Y.).  *Berry* v. *Heller,* 79 Fed. Sup. 476, 477–478 (D. C. E. D. Pa.).  *United States* v. *Steagall,* 88 Fed. Sup. 98, 104

(D. C. N. D. Tex.).   The language of the act is clear that it is solely for the purpose of determining liquidated damages that all violations are deemed to be a single violation.   For other purposes each overpayment is a separate and distinct violation of the act.   *United States* v. *Fullerton*, 87 Fed. Sup. 359, 361 (D. C. D. Mass.).   See also *Kane* v. *Gutmann*, 196 Misc. (N. Y.) 331, 333.

The plaintiff suggests that the case is one in which judgment should be entered here.   We do not agree.   There are questions remaining to be determined which we are in no position to decide.   There is, for example, the question of a reasonable attorney's fee to which the plaintiff is entitled under the statute.   And the question of wilfulness of the violation may also have to be decided.   Under the statute (§ 205) the court is authorized to render judgment for three times the amount of the overcharge unless the "defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation."   The mitigating circumstances are an affirmative defence which the defendant must plead and prove.   *McRae* v. *Creedon*, 162 Fed. (2d) 989, 991–992 (C. C. A. 10).   Let the entry be

*Order dismissing report reversed.*
*Finding for the defendant vacated.*
*Case to stand for trial in the District Court.*