## EDWARD B. MARSH, JR. *vs.* EDWIN S. DROWNE, JR. (and three companion cases).

Middlesex.    December 14, 1973. — February 26, 1974.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Contract,* Performance and breach, Delivery, Validity, Condition precedent. *Broker,* Commission.

In an action by the prospective buyer against the prospective seller for breach of a written contract for sale and purchase of real estate, where there was conflicting testimony warranting either a finding that a necessity for consent of the defendant's brother to the contract in order to make it binding on the defendant was communicated to the plaintiff and agreed to by him before the defendant signed and delivered the contract or a finding that such necessity was not communicated to the plaintiff until after the defendant signed and delivered it, and where there was no evidence that the brother ever gave his consent, and it appeared that the defendant repudiated the contract, there was no error in a refusal by the judge to give requested rulings that as a matter of law the defendant was contractually bound to the plaintiff and that a finding for the plaintiff was required; but it was error for the judge to refuse a requested ruling that the evidence warranted a finding for the plaintiff. [779-781]

A finding for the plaintiff was warranted in an action by a licensed real estate broker for a commission where it appeared that the defendant listed real estate with the plaintiff for sale, that an employee of the plaintiff procured a purchaser with whom the defendant executed a written sale and purchase contract, and that the defendant later repudiated the contract and the property was sold to a third person. [779-782]

FOUR ACTIONS OF CONTRACT. Writs in the Superior Court dated May 23, 1968, and February 28, 1969.

The actions were heard by *Robert Sullivan, J.*

*Donald J. Wood* (*Frederick A. Anderson* with him) for the plaintiffs.

*Robert S. Marsh* for the defendants.

GRANT, J. These are four various actions of contract brought in the Superior Court by the prospective purchaser

of a house and land in Newton (the property) to recover damages for the alleged breach by one or both of the defendants of a written agreement to sell the property and by a real estate broker to recover a commission alleged to have been earned in the circumstances hereinafter described. The cases are here on the plaintiffs' exceptions to the denial of some forty-six requests for rulings submitted in the various actions.

What we shall call the first action (No. 636424) was brought by Edward B. Marsh, Jr. (Marsh), against Edwin S. Drowne, Jr. (Edwin); the single count of the declaration alleges repudiation and breach by Edwin of a written agreement for the purchase and sale of the property. What we shall call the second action (No. 636423) was brought by Jack Yoffe (Yoffe)[1] against Edwin; the amended declaration contains a count which alleges a breach by Edwin of an express agreement to pay a broker's commission and a count in quantum meruit. The third action (No. 301825) was brought by Marsh against Edwin and against Vernon E. Drowne (Vernon), who are described in the writ and in the amended declaration as the executors of the estate of Edwin S. Drowne; the declaration contains separate counts against Edwin and Vernon which allege breach and repudiation of a written agreement for the purchase and sale of the property. The fourth action (No. 301884) was brought by Yoffe against Edwin and Vernon, who are again described as executors; the amended declaration contains separate counts against each defendant for breach of an express agreement to pay a broker's commission and separate counts against each defendant in quantum meruit. The answer of each defendant in each action consists of a general denial and a plea that at no time did the defendant as an individual have any business or contractual relationship with the plaintiff; the statute of frauds (G. L. c. 259, § 1, Fourth) is not pleaded.

The first and third actions (Nos. 636424 and 301825) were consolidated for trial; the second and fourth actions (Nos. 636423 and 301884) were similarly consolidated; the two

---

[1] Who is conceded to be a licensed real estate broker. G. L. c. 112, §§ 87PP-87DDD, inserted by St. 1957, c. 726, § 2, and as subsequently amended.

sets of consolidated actions were loosely tried together without jury, partly on oral stipulations of counsel and partly on indecisive oral testimony. The trial judge, subject to exceptions duly saved, expressly denied all the requests for rulings submitted by the plaintiff in each action and found generally for each defendant in each action. All four cases are here on outline bills of exceptions.

The nature of certain of the requests requires us to summarize virtually all the evidence. Edwin and Vernon are brothers and the co-executors of the will of their father, Edwin S. Drowne. By virtue of a power in the will, confirmed by a license obtained from a probate court, they had authority to sell the property. "The listing price for sale of the . . . [property] given by the co-executors was in the amount of $28,000" (emphasis supplied). "Edwin . . . the executor, agreed with . . . [Yoffe] that he could show the . . . [property] in an effort to procure a buyer." On April 27, 1968, one Rustin, a saleswoman employed by Yoffe, received oral permission from Edwin to, and she did, show the house to Marsh and his wife in Edwin's presence. On Rustin's testimony, Marsh was then generally aware that the property was in an estate of which Edwin was one of two co-executors. On that day Marsh and Edwin signed a brief written agreement under the terms of which Marsh agreed to purchase and Edwin (who signed "Edwin S Drowne Jr Executor") agreed to sell the property for $24,000 and Edwin agreed to pay Yoffe a commission at the rate established by the Boston Real Estate Board.[2] Edwin testified that he signed "[a]s co-executor." At some point there occurred a conversation between Marsh and Edwin in the course of which, on Edwin's testimony, he said he "would have to get . . . [his] brother to agree so he would come down [from New Hampshire] and sign it."[3] On

---

[2] There was also prepared, presumably by Yoffe or by Rustin, a Boston Real Estate Board long form of agreement, under paragraph 29 of which Edwin would have been bound only in his fiduciary capacity as an executor of the will of Edwin S. Drowne. Edwin did not sign that form of agreement and there was no evidence that the signature appearing on the line intended for the buyer's signature was that of Marsh. Vernon did not sign either form of agreement.

[3] Edwin, Marsh and Rustin testified at trial; Vernon did not.

Rustin's testimony that remark, or one of similar import, was made to her and Marsh prior to Edwin's signing or delivering the agreement; on Marsh's testimony no such remark was made until after the signing and delivery. On Marsh's testimony, he urged Edwin to consult with his brother; on Rustin's testimony, that urging came before Edwin signed.[4] Edwin repudiated the agreement prior to the time for performance thereunder, and the house was subsequently sold to someone else for $27,500.

There was no evidence that Edwin ever attempted to negate any personal liability on his part which might arise out of his signing the agreement with Marsh (see note 2)[5] There was no evidence that Marsh was in fact ready, willing and able to purchase on the terms set out in the written agreement.[6] Nor was there any evidence which would have warranted a recovery by Yoffe in quantum meruit.[7]

---

[4] There was testimony by Rustin from which it could have been inferred that Vernon had previously told Edwin that he could act for Vernon in entering into an agreement to sell the property, as well as testimony by Marsh from which it could have been inferred that Vernon had subsequently ratified the agreement with knowledge of its contents. However, as we read the rather confusing transcript, particularly in the light of specific objections offered by counsel for the plaintiffs, such testimony was offered and received for the limited purpose of discrediting certain prior testimony of Edwin and not for the truth of any statements which Vernon might have made to Edwin.

[5] The writs in Nos. 301825 and 301884 ran against Edwin and Vernon individually and not against the property of the estate of which they are the co-executors. *Alfano* v. *Donnelly,* 285 Mass. 554, 555 (1934). *Swenson* v. *Horgan,* 341 Mass. 153, 154 (1960). Contrast *Scottie Industries, Inc.* v. *Donohoe, ante,* 584, 586-587 (1973). On the evidence, if either Edwin or Vernon had been held liable to either plaintiff, it could only have been on the basis of a promise by an individual which would not have bound the estate. *Dresel* v. *Jordan,* 104 Mass. 407, 413-414 (1870). *Durkin* v. *Langley,* 167 Mass. 577, 578 (1897). *Reilly* v. *Whiting,* 332 Mass. 745, 746-747 (1955), and cases cited. See also *Larson* v. *Sylvester,* 282 Mass. 352, 359 (1933); *Downey Co.* v. *Whistler,* 284 Mass. 461, 465-466 (1933); *Downey Co.* v. *282 Beacon St. Trust,* 292 Mass. 175, 179, 180 (1935); *Dolben* v. *Gleason,* 292 Mass. 511, 513-515 (1935). Counsel for the defendants makes no point that Marsh (by Nos. 636424 and 301825) and Yoffe (by Nos. 636423 and 301884) each have two separate actions pending against Edwin individually for their respective causes of action. See note 13.

[6] For this reason alone, there was no error in denying Yoffe's request numbered thirteen in No. 301884, which was addressed to Vernon, who did not sign the agreement. *Driscoll* v. *Bunar,* 328 Mass. 398, 400-402 (1952). *Gaynor* v. *Laverdure,* 362 Mass. 828, 832-833 (1973).

[7] There was, accordingly, no error in denying Yoffe's requests numbered two, seven and ten in No. 636423 and his requests numbered six, nine, fifteen and eighteen in No. 301884. See *John T. Burns & Sons, Inc.* v. *Brasco,* 327 Mass. 261, 263 (1951).

It is clear that neither defendant incurred liability to Yoffe merely by listing the property with him for sale. *Elliott* v. *Kazajian,* 255 Mass. 459, 461-462 (1926). *Walsh* v. *Grant,* 256 Mass. 555, 557-558 (1926). *Bartlett* v. *Keith,* 325 Mass. 265, 267-268 (1950). *Dragone* v. *Dell'Isola,* 332 Mass. 11, 12-13 (1954). As it could have been found on the evidence that Marsh, Rustin and Edwin all understood and agreed at the time Edwin signed and delivered the written agreement that neither he nor Vernon was to be bound unless or until Vernon's signature or other assent should also be obtained (see *Howland* v. *Plymouth,* 319 Mass. 321, 324 [1946]; *Eckstrom* v. *Eckstrom,* 327 Mass. 140, 142-143 [1951]; *Tilo Roofing Co. Inc.* v. *Pellerin,* 331 Mass. 743, 745-746 [1954]), and as there was no evidence that Vernon ever did sign or otherwise give his assent (see note 4), the trial judge could not properly have granted such of the requests as sought rulings (a) that the evidence required a finding for either plaintiff against either defendant, (b) that either defendant was as matter of law contractually bound or otherwise liable to either plaintiff, or (c) that the evidence warranted a finding for either plaintiff against Vernon.[8] See *DiLorenzo* v. *Atlantic Natl. Bank,* 278 Mass. 321, 324-325 (1932); *Perry* v. *Hanover,* 314 Mass. 167, 169-170 (1943). Another group of requests was properly denied as not applicable to or supported by the evidence.[9] See *Harris, petr.* 309 Mass. 180, 181 (1941); *Perry* v. *Hanover,* 314 Mass. 167, 176 (1943).

There is one small but important group of requests which should have been granted. As the trial judge was not required to believe that Marsh, Rustin and Edwin understood and agreed that Edwin was not to be bound by the

[8] Such requests included the following: Marsh's requests numbered two through six in No. 636424; Yoffe's requests numbered six, eight and nine in No. 636423; Marsh's requests numbered two through twelve in No. 301825; and Yoffe's requests numbered five, seven, eight, and ten through seventeen in No. 301884.

[9] Included in this group were Yoffe's requests numbered one through four, seven and ten in No. 636423 and his requests numbered two, three, six, nine, eleven through fourteen, and eighteen in No. 301884. The fact that certain requests have been referred to more than once in notes 6 through 9 of this opinion means that more than one reason existed for properly denying such requests.

written agreement unless or until Vernon's signature or other assent should also be obtained, or because he could have found on the evidence that Edwin made no remark on that subject to either Marsh or Rustin until after Edwin had signed and delivered the agreement, he should have ruled that the evidence was sufficient to warrant findings for Marsh in both the actions brought by him against Edwin.[10] Because Edwin had admitted signing the agreement, the judge should also have ruled that Yoffe had procured a buyer ready, willing and able to buy on terms acceptable to Edwin[11] and that the evidence was sufficient to warrant a finding for Yoffe against Edwin in No. 301884.[12] *Gaynor* v. *Laverdure,* 362 Mass. 828, 831-834, 839-840 (1973). As none of the requests in this group was rendered immaterial by any specific finding or statement made by the trial judge, the exceptions to the denial of these requests must be sustained. *Liberatore* v. *Framingham,* 315 Mass. 538, 541, 542 (1944). Cf. *Stella* v. *Curtis,* 348 Mass. 458, 461-462 (1965).[13]

The exceptions to the denials of the requests for rulings specifically enumerated in notes 10, 11 and 12 of this opinion are sustained; all the other exceptions are overruled. Judgment is to be entered for the defendant Vernon E. Drowne in Nos. 301825 and 301884.

*So ordered.*

---

[10] Marsh's request numbered one in both of Nos. 636424 and 301825.

[11] Yoffe's requests numbered five in No. 636423 and numbered four in No. 301884.

[12] Yoffe's request numbered one in No. 301884. Yoffe's request numbered one in No. 636423 was to the effect that the evidence was sufficient to warrant a finding for him on a specific form of express agreement which was alleged but not proven.

[13] We have now dealt at least once (see note 9) with each of the requests and in the course of doing so have decided that all requests addressed to Vernon were properly denied. See G. L. c. 231, § 124; G. L. c. 211A, § 10. It is to be hoped that the remaining parties will agree to a future course of proceeding which will eliminate the unnecessary duplication of actions (see note 5) and that at any retrial the number of requests will be reduced to what is reasonably necessary in the light of the evidence adduced. See *Hogan* v. *Coleman,* 326 Mass. 770, 772-773 (1951); *Stella* v. *Curtis,* 348 Mass. 458, 459-461 (1965).