Merrick, J.
This is an action to recover for defendant Blue Cross and Blue Shield’s (“BCBS”) failure to make full payment of plaintiff Ronnie Green’s (“Green”) medical insurance claim for the total costs of surgery performed by an out-of-state dentist. The complaint sought damages for the defendant’s alleged breach of contract, deceit and G.L.c. 93A unfair and deceptive practices in refusing to reimburse Green for all expenses incurred and in purportedly misleading her as to the existence and extent of her insurance coverage.
After a lengthy trial, judgment was. entered for the defendant, and Green filed this Dist./Mun. Cts. R. A. D. A., Rule 8C appeal. As Green alleges, inter alia, that the court’s *166 findings were clearly erroneous, we consider the evidence most favorable to BCBS. Hartford Casualty Ins. Co. v. New Hampshire Ins. Co., 417 Mass. 115, 123 (1994).
Green suffered from a “dentofacial deformity” called apertognathia or “open bite,” a separation of the jaws which prevents the teeth from properly closing together. After consulting medical and dental professionals in Massachusetts and other states, Green elected to be treated by Bruce N. Epker, D.D.S. (“Epker”), a specialist in oral and maxil-lofacial surgery[1] practicing in Fort Worth, Texas. Green’s surgery was performed in Texas by Dr. Epker on June 10, 1992. Epker’s fees ultimately exceeded the amount of Green’s insurance reimbursement by approximately $5,800.00.
The discrepancy between Epker’s fees and the insurance payment was a function of both Epker’s status as an out-of-state medical provider and the nature of the procedures he performed. Green, an individual subscriber to BCBS’ Managed Major Medical plan (“the Plan”), was at all relevant times very familiar with the insurance certificate containing the Plan’s covered services, limitations and exclusions and with periodic BCBS newsletter changes in the same. Specifically excluded from the Plan were cosmetic surgery; services amounting to “dental care,” rather than dental surgery; and any treatment, including dental surgery, which BCBS determined to be “not medically necessary” after a review of an insured’s medical and treatment records. The Plan provided that subscribers would not be “balance billed” by Massachusetts “participating physicians and dentists” for fees in excess of the “usual and customary charge” established for covered services by BCBS with the approval of the Insurance Commissioner. The certificate also stated, however, that out-of-state medical providers would be paid only the “usual and customary charge” accepted by Massachusetts participating providers under the Plan, and further warned that subscribers might have to pay additional amounts charged for out-of-state treatment. Finally, a BCBS newsletter reviewed by Green prior to her surgery advised that non-participating or out-of-state providers could “balance bill” subscribers for the difference between their fees and the BCBS customary allowance for any procedure.
Moreover, in response to Green’s numerous inquiries, she was consistently advised by BCBS before her Texas surgery that it could not grant prior approval. She was informed that, based upon existing BCBS computer information,[2] one of the proposed procedures was not covered because it was classified as cosmetic, and that the specific medical necessity and coverage of the other procedures would have to be submitted to an “Individual Consideration” or “IC” review process. At Green’s request, Epker sent a letter to BCBS in February, 1992 which detailed the nature, costs and “medical necessity” of three proposed procedures.[3] On April 6,1992, BCBS authorized a two-day hospital stay as “medically necessary” for the surgery, but did not authorize the surgery *167 itself.[4] BCBS continued to advise Green and Epker that the surgery itself would require IC review after the fact when treatment and post-operative records would be available.[5] Green was also advised that she would be liable for any Epker billing in excess of the Massachusetts customary charge determined through IC. BCBS employees testified that Green made no inquiry as to pricing or the dollar amount of benefits.[6]
The same information as to IC review and Epker balance billing was given to Green before her surgery by the Massachusetts Division of Insurance in response to a complaint she had filed against BCBS.
After Green’s surgery, Epker filed a claim with BCBS in an amount exceeding his original proposal due to additional procedures. After some prodding by Green and the Division of Insurance, Epker’s bill was submitted to IC in September, 1992. Although the IC examiner seriously doubted the medical necessity of the surgery, she followed instructions simply to price the two covered procedures in accordance with her usual practices.[7] Epker unsuccessfully appealed the amount paid and Green complained to no avail to BCBS and the Division of Insurance. Green’s G.L.c. 93A demand and this suit followed.
The trial was conducted on five separate dates and involved three days of actual testimony. Green filed sixty-seven (67) requests for rulings of law. The judge found for the defendant, made extensive written findings and ordered Green’s requests stricken as excessive in number.
1. Green’s principal contention on this appeal is that the court’s order striking all of her requests for rulings was error. It is well established, however, that it is within the trial judge’s discretion to strike unreasonably excessive requests in an appropriate case.
We have no doubt that where the number of requests is palpably in excess *168 of the number legitimately needed in a case the trial judge has the power either to order them stricken from the files, or to require a party to reduce them to a reasonable number or risk the loss of any rights under them.
Stella v. Curtis, 348 Mass. 458, 460 (1965), quoting from Hogan v. Coleman, 326 Mass. 770, 773 (1951). The rationale underlying the proper exercise of judicial discretion in this area is equally well-settled.
The purpose of requests in a case tried without a jury is to separate law from fact by requiring the judge to ‘state the rules of law adopted by him for his guidance as a trier of fact in order that the right of review thereof may be preserved.’ [citations omitted]. They were not intended as a device to confound or ensnare the trial judge. Counsel ought not to be permitted to overwhelm the judge with an avalanche of requests so that in working his way out of the debris he will be lured into committing reversible error. To sanction such a practice would pace an intolerable burden on the trial judge and would convert the trial of a case into a game in which adroitness and cunning would triumph.
Hogan v. Coleman, supra at 772-773. The prohibition against excessive requests is also codified in Mass. R. Civ. R, Rule 64A(a), which unequivocally mandates that “[r]equests shall not be redundant or unreasonable in number.” The striking of a party’s requests for rulings is a severe sanction which historically has been rarely imposed and almost never reversed on appeal. Indeed Green has not advanced, nor has our research unearthed, a single civil case in the forty-five years since Hogan v. Coleman in which the striking of requests has been overturned. Caselaw is in fact replete with instances of notations by the reviewing court that the trial judge could have properly stricken or ordered the reduction of requests, instead of acting upon them. See, e.g., Stella v. Curtis, supra at 460; Pauyo v. Massachusetts Bay Transp. Auth., 1993 Mass. App. Div. 64 n.2; STE Financial Corp. v. Popkin, 1991 Mass. App. Div. 204, 205 n. 1; Goslow v. Pittsburgh Plate Glass Co., 39 Mass. App. Dec. 1, 3 (1967); LeDonne v. Slade, 38 Mass. App. Dec. 83, 89-90 (1967), aff’d 355 Mass. 490 (1969).
An abuse of judicial discretion, however, may well be found in an appropriate case where the striking of a party’s requests was clearly the consequence of “arbitrary determination, capricious disposition or whimsical thinking.” Davis v. Boston Elev. Rwy. Co., 235 Mass. 482, 496 (1920). While discretion, by its very nature, does not lend itself to hard and fast rules, Boston v. Santosuosso, 302 Mass. 169, 174 (1939); Long v. George, 296 Mass. 574, 578 (1937), a proper exercise of discretion is in all instances the reasoned product of a conscientious consideration of relevant criteria. An outline of the factors determinative, on appellate review, of the propriety of a trial judge’s response to excessive requests is in order.
The obvious, initial inquiry to be made is whether the requests were, in fact, excessive in number. There is no fixed, numerical cut-off point, to be derived from precedent or practice, at which requests are automatically deemed excessive. What is required is a fair comparison of the number of requests submitted with the number and complexity of the legal issues in the case.
Second, a qualitative examination of the substance of the requests will be undertaken by the reviewing court. Where the “bulk of the requests were clearly for ... findings of fact,” or were inapplicable to facts found by the court, Goslow v. Pittsburgh Plate Glass Co., supra at 3, or where “only a very few of them were for rulings of law as opposed to findings of fact or mixed questions of fact and law,” Copp v. Hague, 1994 Mass. App. Div. 11, 12, an order to strike might be viewed as appropriate. Such order may also be upheld when the requests seek rulings that the evidence is sufficient to warrant findings of fact which are not dispositive of a material issue in the case. Stella v. Curtis, supra at 462.
Third, the absence of any indication that the ultimate decision was tainted by legal error may well excuse a marginally appropriate response to excessive requests. For *169 example, it has long been held that error in the denial of a warrant request does not require reversal if the judge made findings demonstrating that his or her decision was properly based on an assessment of the weight and credibility of the evidence rather than on a legal determination that the evidence was insufficient to permit a finding in favor of the requesting party. DiGesse v. Columbia Pontiac Co., 369 Mass. 99, 101 (1975); Liberatore v. Framingham, 315 Mass. 538, 541-542 (1944). Although not required in District Court practice, adequate findings of fact and conclusions of law in full compliance with Mass. R. Civ. R, Rule 52(a) would obviate the need to rule on particular requests. Lynn v. Nashawaty, 12 Mass. App. Ct. 310, 315 (1981). An order striking requests as excessive may, of course, be upheld on appeal even when the absence of error is not affirmatively shown by findings.
Finally, the propriety of the particular sanction chosen, in the light of realistic, practical alternatives, must be examined. A trial judge has numerous options, other than an order to strike, when confronted with an unreasonable number of requests for mlings. As noted, the judge may disregard them and write findings and conclusions which cover all material legal issues in compliance with Mass. R. Civ. R, Rule 52(a). The judge is also authorized to order the party to reduce the requests to a reasonable number. Stella v. Curtis, supra at 460; Hogan v. Coleman, supra at 773. This approach will be preferable for obvious reasons in the vast majority of cases where requests are excessive, and trial judges are encouraged to compel parties “to refashion and reduce the number as a condition precedent to passing upon any of them.” Stella v. Curtis, supra at 461, citing Commercial Credit Corp. v. Stan Cross Buick, Inc., 343 Mass. 622, 626 (1962). See also Marsh v. Drowne, 1 Mass. App. Ct. 777, 782 n. 13 (1974); Pauyo v. Massachusetts Bay Transp. Auth., supra at 64 n. 1. The judge could also specify how many requests would be adequate for the case, and instruct counsel to choose requests from his original submission up to the specified maximum number for the court’s consideration. Alternatively, upon examination of the requests, the judge might select and rule upon those which acceptably deal with the decisive issues, particularly those requests pertaining to the sufficiency of the evidence which are in the form prescribed by Mass. R. Civ. R, Rule 64A. As a practical matter, however, this approach defeats the purpose of the rale against excessive requests because the judge must still analyze all of the requests filed.
No court can be compelled to go through a mass of undigested material presented by a party in order to find a little that is germane to the case. A great bulk of chaff need not be searched to find here and there a grain of wheat.
Goldman v. Ashkins, 266 Mass. 374, 379 (1929).
The final option is simply to strike the requests. As the ultimate sanction for a party’s violation of Rule 64A(a), this approach should be reserved for the most egregious cases and is one which we cannot encourage. It should be noted, however, that the existence of lesser sanctions would not per se render the imposition of a sterner penalty an abuse of discretion in all cases. Friedman v. Globe Newspaper Co., 38 Mass. App. Ct. 923, 925 (1995).
In summary, any review of a judge’s exercise of discretion in striking or reducing excessive requests will be predicated on the following: (1) the number of requests and the number and complexity of the legal issues in the case; (2) the predominant quality of the requests, and the existence of any request which would have required a different ultimate finding; (3) other indicia of the existence or absence of prejudicial legal error in the case decision and (4) the propriety of the sanction chosen.
Applying these considerations to the present case, we note that Green filed 67, often lengthy, requests for rulings which occupy ten single-spaced pages of text. While the facts in the case are somewhat complex in that they involve the technical fields of dental surgery and the mass computerized administration of claims for health care insurance, complicated facts do not justify numerous requests for rulings of law. With respect to legal issues, Green’s complaint presented straightforward breach of contract, deceit and 93A claims. The effective presentation of neither the limited legal theories advanced by *170 the parties, nor the ultimately dispositive issues in the case, required the submission of anything close to 67 separate requests for rulings.
An examination of each of the 67 requests reveals that twenty-four of them[8] were correct, if often incomplete, statements of law which could have been properly allowed as consistent with the court’s findings and ultimate decision. The remaining forty-three requests sought findings of fact (in many cases argumentative, hyperbolic or contrary to the court’s specific findings), or, at best, presented mixed matters of fact and law.[9] A correct ruling on any one of the requests would not have required a judgment for Green. Moreover, the judge’s lengthy findings of fact, which are substantiated by the evidence, fully explain his resolution of the principal issues in the case.
Accordingly, there was no abuse of discretion amounting to an error of law in the judge’s striking of Green’s requests. While we might have chosen the lesser sanction of permitting Green’s counsel to abridge the requests, we recognize that the judge could have reasonably concluded from the nature of the requests and the conduct of the trial to date that such an effort would have been pointless. In any event, substituted judgment is not the standard of appellate review of a trial judge’s exercise of discretion. Scannell v. Ed. Ferreirinha & Irmao Lda., 401 Mass. 155, 160 (1987).
2. Bereft of a single legal issue to appeal because of the court’s striking of her requests for rulings, Green complains that the court’s findings were “clearly erroneous.” Mass. R. Civ. P., Rule 52(a). On each of the contested points, however, Green had the burden of proof and the evidence was either conflicting or entirely in BCBS’ favor.
In order to conclude that it was clearly erroneous for the trial judge to fail to find a fact as to which the appellant was the proponent in the trial below, we must conclude that the evidence at the trial court required the finding in question. ... ‘It is only in a rare case in an exceptional situation that it can be ruled as a matter of law that a proponent has met this burden....’ ‘[Required] findings for the proponent are given only where the facts are undisputed or indisputable, or shown by evidence by which the opponent is bound.’ [citations omitted].
LaLonde v. LaLonde, 30 Mass. App. Ct. 117, 119 (1991). The trial court’s detailed findings of fact were amply supported by the evidence, and we find no merit in any of Green’s objections to such findings. A few examples are illustrative.
Green’s principal factual assertion is that she would not have had her surgery in Texas if she had not reasonably relied on BCBS’ misrepresentation that BCBS would pay the full cost of her dentist’s bill in Texas. However, there was no evidence that BCBS ever made such a representation except Green’s own testimony, which the judge was free to disbelieve. Indeed all of the documentary evidence, including Green’s insurance certificate and memoranda from the Division of Insurance, coupled with the testimony of all witnesses other than Green, was to the contrary. In the absence of a misrepresentation, there could be no reasonable, detrimental reliance. In any event, Green admitted that she merely assumed that Epker’s fees would be less than BCBS’ customary allowance for the surgery in Massachusetts. There was overwhelming written and testimonial evidence that Green had been repeatedly advised that she would be liable for any Epker fee in excess of the BCBS payment, and that she failed to make sufficient inquiry of anyone on the subject of pricing. Moreover, Green gave numerous other reasons for her decision to have Epker perform the surgery in Texas which were entirely unrelated to surgical costs, including a recommendation from a family friend who was an Epker patient, Epker’s preeminence and purported pioneering work in the treatment of apertognathia, and *171 Green’s unsuccessful consultation with numerous doctors and dentists over the years in Massachusetts and other states, including a Boston dentist who recommended that she wear orthodontics (braces) for two years before the surgery. During these consultations, through Epker’s surgery and up to this trial, with its fees and expenses, Green received significant financial and other support from her parents, both of whom are physicians. In short, there was nothing to compel a finding as a matter of law that Green would not have gone to Texas at any cost.
In other instances, Green simply misinterprets the judge’s findings. Contrary to Green’s assertion, the judge did not conclude that she had requested IC. The findings in their entirety render it clear that the judge instead found that Green requested prior approval of procedures which required IC and wanted the IC to be completed before the surgery. Nor did the court, in finding that Green had failed to make adequate inquiries about pricing, create some new legal duty on the part of the insured as Green argues. The court simply opined that having been put on notice that she would be liable for any excess Epker fees, Green could not ignore the issue of pricing and later claim that she reasonably relied on mere assumptions on her part.
3. Green also objects to the judge’s exclusion of certain evidence of other claims. Specifically identified by transcript references in her brief are: (1) evidence of charges for an unrelated neurosurgery claim in 1990 which BCBS disallowed, then reconsidered and paid; (2) evidence of the handling of a claim from Beth Israel Hospital in 1994 after this action was brought; and (3) a claim for prescription drugs in 1993, which was originally denied and then paid after telephone calls from Green. The judge ruled earlier when Green’s counsel indicated an intention to offer some 52 pages of bills, including some paid, some denied and some not even submitted to BCBS, that he would accept only bills for which a claim had been made in this case.
Whether evidence is relevant is a question ‘addressed to the sound discretion of the trial judge.’... ‘The issue of relevancy is a matter on which the opinion of the trial judge will be accepted on review except for palpable error’ [citations omitted].
Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 477 (1991). The judge was well within his discretion in excluding the evidence of other claims.
4. Finally, Green appeals on the ground that the judge “ignored” BCBS’s response to her requests for admissions. The docket and pleadings indicate that Green filed Mass. R. Civ. R, Rule 36 requests for admissions and that BCBS responded. The trial transcript, however, is devoid of any indication that Green’s counsel called the admissions to the judge’s attention, much less endeavored to introduce them into evidence. A party who wishes to rely on Rule 36 admissions must offer them into evidence to give the opponent an opportunity to object, explain or, if appropriate, move to amend. S. Kemble Fischer Realty Trust v. Board of Appeals of Concord, 9 Mass. App. Ct. 477, 479 (1980); Meagher v. United States Fidelity & Guaranty Co., 1994 Mass. App. Div. 134, 136. The judge properly disregarded the admissions in question.
There being no error, the court’s judgment for the defendant is affirmed. Appeal dismissed.

 As described by Dr. Epker, this “specialty of dentistry ... includes the diagnosis, surgical and adjunctive treatment of diseases, injuries and defects involving both the functional and aesthetic aspects of the hard and soft tissues of the oral and maxillofacial regions.”

 Reduced to its simplest terms, the computerized payment and information systems of BCBS, and most health providers and insurers, utilize nationally standardized “Current Procedure Terminology” or CPT codes to classify the majority of medical procedures. In BCBS’ system, more than 75% of the CPT codes pertain to ordinary or garden variety procedures covered by insurance, and show a corresponding “usual and customary charge” which will be paid. Other CPT codes designate excluded procedures; e.g., those cosmetic in nature. A third “category” of codes are for unusual or inherently case-specific treatments for which there is logically no customary charge or desighation of unqualified coverage or exclusion.
Any procedure in either of the latter two categories is of necessity referred to a BCBS claim examiner under a standard procedure used by insurers called “Individual Consideration” or “IC.” See 114.3 CMR 40.02(2). IC entails not only a determination of medical necessity, but also a calculation of the amount of insurance benefits to be paid, if any, factored in reference to the customary allowance for similar procedures.

 Epker listed the proposed procedures and costs as a LeFort Osteotomy ($4,500.00), Horizontal Osteotomy of Mandible ($1,500.00) and Implants ($1,200.00). Green’s certificate explicitly stated that the “medical necessity” of any procedure would be determined by BCBS, and that an insured’s doctor’s opinion as to medical necessity was not controlling.

 Green’s BCBS certificate covered hospitalization costs even for non-covered services if the procedures could not be safely performed outside of a hospital.

 Green’s case is illustrative of the necessarily retroactive character of IC review. Although Green was diagnosed as suffering from apertognathia, such diagnosis did not indicate whether her condition involved a serious functional impairment of the jaw affecting her ability to chew, or only an aesthetic or cosmetic “deformity.” As the nature and severity of the condition could not be determined until Green’s jaw was surgically opened and examined, BCBS could not determine whether Epker’s surgery was medically necessary or merely cosmetic without a review of surgical and post-operative records. Similarly, the insurance benefits to be paid, if any, could not be calculated without a detailed analysis of the particular procedures actually performed, as well as the extent of repair or reconstruction, surgical complications, the need for additional materials or dental devices etc. entailed in such procedures. This analysis would be followed, by a comparison of similar or analogous procedures, and a correlation of their pricing specifics with relevant adjustments for Green’s case. We note that while Epker’s pre-sur-gical proposal listed three procedures, he in fact performed additional procedures as part of Green’s treatment which clearly could not have been given “prior approval.”

 Nor did Green ever discuss fees or balance billing with Epker. She testified that she “assumed” that her Texas dentist would charge less than the Massachusetts usual and customary fee.

 Neither medical necessity, the exclusion of the cosmetic and additional procedure, nor the examiner’s calculation of the customary allowance for the remaining two procedures was at issue in this case. Green contends instead that BCBS is somehow estopped from relying on the customary allowance limitation.

 Numbers 1 through 7,16,18,19,26, 32, 36, 37,39,42,43,44 and 54 through 59.

 One of the less egregious examples is request no. 67: “Green is entitled to judgment as a matter of law on each of counts I [G.L.c. 93A], II [breach of contract] and III [misrepresentation] of her verified complaint, and to multiple damages and attorneys’ fees under Count I, since the wrongful conduct of BCBS was willful and BCBS made no offer in response to Green’s Ch. 93A demand letter.”