HENRY F. ALBIANI *vs.* ROMMIE L. LOUDD & another.

Middlesex.    October 17, 1975. — March 19, 1976.

Present: ROSE, ARMSTRONG, & GOODMAN, JJ.

*Contract,* Parties, Implied, For assignment of lease, Damages.    *Escrow.*

Where it appeared that the plaintiff and the individual defendant entered into a contract whereby the plaintiff was to assign his interest in a lease to the individual defendant or his nominee and that the corporate defendant, although a stranger to the contract, accepted assignment of the lease with knowledge of the terms of the contract, a finding that there was an implied contract between the plaintiff and the corporate defendant was warranted. [166-171]

BILL IN EQUITY filed in the Superior Court on April 23, 1973.

The case was heard by *Hallisey,* J.

*George R. Halsey* for the defendants.

*Mark J. Witkin* for the plaintiff.

GOODMAN, J.   The defendants, Rommie L. Loudd (Loudd) and Newton-Relcorp. (Relcorp), appeal from a judgment entered on a bill for declaratory and other relief (as amended) alleging a contract dated January 20, 1971 (the January 20 contract), between the plaintiff and Loudd, whereby the plaintiff promised to assign to Loudd "or his nominee" the plaintiff's interest in a lease which was given by Telmwood Realty Trust (Telmwood) to the plaintiff, the plaintiff's brother (Peter Albiani), and Albiani Lunch, Inc. The contract further provided that "so

long as the BUYER [Loudd] or his nominee shall obtain the benefits of the above-mentioned lease and obtain all that he is entitled to under the Purchase and Sale Agreement between himself and said Receiver,[1] and the BUYER or his nominee shall commence operating a restaurant on the premises described in said lease, the BUYER or his nominee shall be obligated to pay to Henry F. Albiani, or his wife, if she shall survive him, the sum of $8,000.00 per annum, payable monthly on the first day of each month in the amount of $666.66, so long as he (and/or his wife) shall live . . .."

The bill also alleged that Relcorp was Loudd's nominee, that it "commenced the operation of a restaurant business . . . which operations are presently continuing," and that it was subject to the contract to make the aforesaid payments to the plaintiff or his wife. The bill further alleged that payments under the contract were made to the plaintiff through January 1, 1972, when they were stopped in breach of the agreement. Both Loudd and Relcorp denied liability.

On July 24, 1974, "upon [the] evidence, exhibits, and a stipulation of facts" the trial judge entered "findings, rulings, declarations, and order for judgment" including "findings of fact and rulings of law" and "declarations" (among others) that "the express contract between the plaintiff and Loudd . . . is valid and binding on the parties thereto"[2] and that "there is an implied contract between the plaintiff and Newton-Relcorp. which is valid and binding on the parties thereto." He also ordered that judgment be entered for the plaintiff from January 2, 1972, at the rate of $8,000 per annum with interest.

Relcorp's attack is centered on the trial judge's ultimate

---

[1] The contract recited that Loudd "has or is about to enter into an Agreement for the purchase of the assets of Albiani Lunch, Inc." The trial judge found that on January 28, 1970, such an agreement was made between the receiver of Albiani Lunch, Inc., and Loudd "or his nominee."

[2] The reference is to the January 20 contract. (See fn. 1 and the text to which it is appended.)

finding that an implied contract arose between it and the plaintiff. Relcorp disputes the trial judge's subsidiary finding that the plaintiff's assignment was delivered directly to Relcorp rather than to Loudd[3] and thus attempts to bring itself within such cases as *Koppel* v. *Massachusetts Brick Co.* 192 Mass. 223 (1906), in which a plaintiff who sold certain goods to an individual buyer could not recover from a corporation subsequently formed to which the buyer then transferred the goods. See *Lennox* v. *Haskell,* 253 Mass. 334, 339 (1925). We do not believe that those cases are applicable. In this case it was permissible (and obviously not clearly erroneous) for the trial judge to find in effect that Relcorp "although a stranger to the document [the agreement between the plaintiff and Loudd], still ... accepted the ... [assignment of the lease] with knowledge of the terms set out in that document and upon an ... implied undertaking to perform them in consideration of the [transfer of the assignment]." *Holyoke Envelope Co.* v. *U. S. Envelope Co.* 182 Mass. 171, 174-175 (1902). See *North Anson Lumber Co.* v. *Smith,* 209 Mass. 333, 337 (1911), in which the Supreme Judicial Court distinguished the *Koppel* case. See also *New England Oil Refining Co.* v. *Wiltsee,* 3 F. 2d 424, 428 (1st Cir. 1925).

The trial judge pointed out in his findings that the plaintiff's assignment was part of "one major transaction in the first half of 1971 designed to transfer to Newton-Relcorp. the entire leasehold interest in the premises ... together with all of the assets of Albiani Lunch, Inc." and that those assets were transferred directly to Relcorp which, the trial judge found, "accepted ... [them] as the

---

[3] Relcorp does not take issue with the finding that the incorporators (who, it was testified, were the principals and apparently the stockholders, see fn. 4, *infra,* and included Loudd) were told that Relcorp would be bound by the January 20 contract. (From the testimony it is clear that they were thus advised before the formation of Relcorp.) Nor does Relcorp, which was incorporated in March of 1971, dispute the finding that it made payments to the plaintiff through January 1, 1972. We need not decide whether these findings, in the light of the entire transaction, would, without more, permit the inference of an implied contract.

nominee of Loudd." It is not questioned that the assets of Albiani Lunch, Inc., were thus transferred. Indeed, the purchase and sale agreement is conditioned on "the approvals of the appointment of the manager of the nominee BUYER corporation." Moreover, Telmwood's consent, dated February 1, 1971, to the assignments to Loudd, "or his Nominee" by the plaintiff and by the receiver of Albiani Lunch, Inc., of their interests in the lease provides specifically for the organization of a corporation to be the "Nominee of the Assignee [Loudd] . . . [for the] receipt by it of a Bill of Sale, together with assignment to it of the interest in the aforesaid lease . . .."[4] There is nothing to indicate that the transaction was not consummated as described. Indeed, the evidence is clear that Relcorp, sometime after its incorporation, had possession of the plaintiff's assignment which it reassigned to a bank in connection with a loan.[5] See *Finegan* v. *Prudential Ins. Co.* 300 Mass. 147, 152 (1938).

Moreover, the interest of Peter Albiani in the lease was transferred on May 10, 1971, by his trustee in bankruptcy directly to Relcorp after its incorporation and Telmwood's recorded "Notice of Consent to Assignment of Lease" dated June 3, 1971, and made pursuant to its earlier con-

---

[4] The entire clause and the following clause read:

"5. The Assignee shall cause to be organized a Massachusetts corporation to be known as REL-CORP, which corporation shall conduct its business under the firm name and style of Mill Falls Restaurant; and further, said corporation shall be the Nominee of the Assignee and upon payment of the purchase price and receipt by it of a Bill of Sale, together with assignment to it of the interest in the aforesaid lease, shall confirm and ratify the acceptance by the Assignee to the within Consent of The Lessor to the assignments hereinabove referred to; that the stockholders of Rel-Corp shall be Rommie L. Loudd, Jesse Richardson and William Elias; that Rel-Corp shall promptly and faithfully perform the Lessees' obligations under the Lease dated April 6, 1964.

"6. The Lessor agrees to execute a Notice of Consent to Assignment to be prepared by Lessee and recorded with Middlesex South District Deeds."

[5] A letter from Relcorp's attorney to the bank states: "Enclosed are the Assignments of the Lease, transferring the interests of Henry Albiani and Albiani Lunch, Inc. to the Debtor and Debtor's Assignment to the Bank." It is clear that the "debtor" is Relcorp.

sent dated February 1, 1971 (see fn. 4 and the text to which it is appended), was to "the assignment by ... Receiver of Albiani Lunch, Incorporated, and Henry F. Albiani of all their right, title and interest as Lessees in, to and under the aforesaid Lease to Newton Relcorp, a Massachusetts corporation having its usual place of business ...." It was not a consent to an assignment to Loudd or by Loudd. As the trial judge pointed out in his findings: "[T]he lack of an assignment from Loudd to Newton-Relcorp. indicates that Loudd never accepted the assignment." An inference that there was delivery directly to Relcorp by the escrowee, who held the assignment, was obviously permissible.

In the light of the transaction, as it was consummated, we find singularly unpersuasive Relcorp's argument that the January 20 contract provides for a transfer to Loudd and only to Loudd.[6] Read as a whole, and together with the purchase and sale agreement, which defines "BUYER" as Loudd or his nominee, and with other parts of the January 20 contract, which recite Telmwood's willingness to consent to the plaintiff's assignment "to the BUYER or his nominee," it is clear that a transfer to Loudd or his nominee was intended.

We also reject Relcorp's argument that the assignment must be considered to have been delivered when it was placed in escrow with the plaintiff's attorney rather than when the attorney delivered it to Relcorp and, therefore, that Relcorp, because it did not exist at the former date, could not have received the assignment directly. The general rule is that an instrument held in escrow is considered

---

[6] The paragraph relied on reads: "That simultaneously with execution of the Purchase and Sale Agreement of even date between Rommie L. Loudd, BUYER, and ... Receiver of Albiani Lunch, Inc., Henry F. Albiani shall forthwith deliver his assignment of all his right, title and interest in and to a lease between Telmwood Realty Trust and Albiani Lunch, Inc., et ali, dated April 6, 1964, to Rommie L. Loudd or his nominee, which assignment shall be held in escrow by ... [plaintiff's attorney] and *delivered to the BUYER* upon consummation of the Agreement between the BUYER and ... [the receiver] hereinabove named" (emphasis supplied).

as taking effect when it is delivered to the grantee named therein. *Wheelwright* v. *Wheelwright*, 2 Mass. 447, 453 (1807). Anno. 117 A.L.R. 69, at 69, 74 (1938). 28 Am. Jur. 2d, Escrow, § 29. See *Daggett* v. *Daggett*, 143 Mass. 516, 520 (1887). This is not a case in which the effectuation of the intent of the parties or equitable considerations generally require that the delivery of the assignment relate back to the time it was placed in escrow. Cf. *Band* v. *Davis*, 325 Mass. 18, 20-21 (1949), and cases cited.

Relcorp contends that, even if there were an implied contract, the plaintiff is entitled at most to nominal damages because he has failed to show the reasonable value of the assignment. This argument misconstrues the nature of the implied contract. This is not an action upon a quantum meruit under which, absent a specific contract price, a plaintiff recovers the reasonable value of his performance. Cf. *Driscoll* v. *Bunar*, 328 Mass. 398, 403-404 (1952) ("[t]here was no evidence that the defendant promised to pay a certain percentage of the selling price") ; *Hurwitz* v. *Parkway Country Club, Inc.* 343 Mass. 661, 665-666 (1962) ("[n]o price was fixed"). Relcorp took the assignment with knowledge (see fn. 3) that in return it was to agree to pay $8,000 annually (payable monthly) to the plaintiff for his life (and thereafter the same sum to his wife if she survived him). It was therefore obligated under the implied contract to make those payments, and the trial judge was correct in awarding the plaintiff damages from January 2, 1972, in accordance with the undertaking of the parties. *Amesbury & Salisbury Gas Co.* v. *Gibney*, 210 Mass. 498, 499-500 (1912) (recovery on an implied contract on the basis of a specific established rate). See Williston, Contracts, § 91A, at 322-323 (3d ed. 1957).[7]

---

[7] Because Relcorp did not plead the statute of frauds, we need not consider its contention that the implied contract violates the statute. *Abalan* v. *Abalan*, 329 Mass. 182, 183 (1952). *Gentile Bros. Corp.* v. *Rowena Homes, Inc.* 352 Mass. 584, 590 (1967).

We also reject Relcorp's argument that the admission of certain testimony concerning statements made during the negotiations leading

Albiani *v.* Loudd.

Loudd's only contention is that if the trial judge's finding that the assignment was delivered directly to Relcorp is correct then Loudd cannot be held liable to the plaintiff under the express contract, because the plaintiff failed to perform his obligation under the express contract to deliver the assignment to Loudd. This argument is based on a misreading of the express contract. The plaintiff was not obliged to deliver the assignment to Loudd, but rather to Loudd "or his nominee." This the plaintiff did when his attorney delivered the assignment to Relcorp as Loudd's nominee. There is nothing in the contract to suggest that Loudd was to be released from performance under the contract if the assignment were given to his nominee instead of to him. There was no evidence of a novation by which the plaintiff might have released Loudd from his obligation on the January 20 contract.

Accordingly, the judgment is to be modified to recalculate the damages at the rate of $8,000 per year up to the date of modification and to include, specifically, the declarations made by the trial judge in his "findings, rulings, declarations, and order for judgment." (The declarations were apparently omitted inadvertently.) Costs are to be taxed against the defendants.

*So ordered.*

---

up to the January 20 contract between the plaintiff and Loudd violated the parol evidence rule. This argument must fail because the testimony was admitted not to vary the terms of the express contract between the plaintiff and Loudd, but to prove an implied contract between the plaintiff and Relcorp. See *Louis Stoico, Inc.* v. *Colonial Dev. Corp.* 369 Mass. 898, 903-904 (1976).