Merrick, J.
This is an action for the alleged breach by defendants Robert E. Hague (“Hague”) and Modern Key Shop, Inc. (“Modern”) of a contract entered into with the plaintiff’s testator, Paul C. Copp (“Copp”). The plaintiff has appealed the trial judge’s finding for the defendants.[3]
The reported evidence indicates that Copp had been a locksmith doing business as “Modern Key Shop” for a period of years during which he became friendly with Hague who had never been a locksmith. After a series of discussions, the two agreed that Hague would buy Copp’s business for $67,000.00. Both understood that Hague intended to contract in a corporate capacity. Their agreement was set forth in two documents (prepared without assistance of counsel, as will become apparent) entitled “Agreement” and “Promissory Note.”
The Agreement recites that it is between “Paul C. Copp (hereinafter referred to as the seller)” and “the Buyer, or to a Corporation to be formed and designated by him.” The “Buyer” is not identified except by the masculine pronoun and by the subscription on the Agreement which appears as follows:
/s/ Robert E. Hague. Pres.
Modern Key Shop, Inc.
Robert E. Hague, Pres.
The Promissory Note for the $67,000.00 consideration identifies the promisor only as “the undersigned.” The Note is signed in precisely the same manner as the Agreement.
The Agreement and Promissory Note were signed and dated May 10, 1988. Hague filed the articles or organization of “Modern Key Shop, Inc.” with the Secretary of State on May 16,1988, and the articles were approved on June 7,1988.
The Agreement provided for the sale of “all equipment and inventory presently located at the Modern Key Shop” and for the Seller’s “transfer [of] a 1981 Ford Van Vehicle to the Buyer as well as all inventory and equipment within.” The Agreement included a non-competition clause, required a transfer of the business location lease to the Buyer and provided that the Seller would retain a security interest in “stock and inventory.” The Agreement also recited:
*12 The Seller further agrees that he will continue to work at the business for a minimum period of one year at a salary to be mutually agreed upon between the Seller and Buyer.
The Promissory Note[4] provided for monthly payments based on a thirty year amortization schedule, but required a “balloon” payment of the full balance after ten years.[5] Monthly payments were made to Copp,[6] who worked in the business for three months until he became ill. There is no evidence of any agreement on a salary for Copp while he worked, or that he was paid anything. The monthly payments on the Note continued until Copp died in March, 1990. The monthly payment for April of 1990 was tendered, but payment on the check was stopped. No payments have been made since.
Modern remains in business, still operated by Hague who estimates the “value” of a replacement for Copp to be $50,000.00.
1. The plaintiff filed a “Request for Findings and Rulings” which contained forty-nine (49) requests, and now complains that the trial court declined to rule on them “on the basis of excessiveness.” The judge had the discretion to do so.[7] Our own review of the plaintiffs requests indicates that only a very few of them were for rulings of law as opposed to findings of fact or mixed questions of fact and law.
Ordinarily, it would have been error for the judge to refuse to rule on those requests which sought rulings of law.[8] However, the trial judge voluntarily made findings of fact which fully explain his reasoning on all the issues raised by the requests. “In these circumstances, responses [by the trial judge] to requests for rulings are superfluous.” Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc., 14 Mass. App. Ct. 396, 405 (1982); Lynn v. Nashawaty, 12 Mass. App. Ct. 310, 315 (1981).
2. The contract in the present case is one made by a promoter on behalf of a corporation which had not yet come into existence. In Massachusetts, such a contract has long been held to be enforceable by and against only the promoter and not the subsequently formed corporation, even in the event of subsequent adoption or rat *13 ification by the corporation. Abbott v. Hapgood, 150 Mass. 248, 252 (1889). See PEAIRS, BUSINESS CORPORATIONS 2d, §222 at 421-422. While never renounced, the rule has been gradually eviscerated, most prominently by Chief Justice Holmes in Holyoke Envelope Co. v. US. Envelope Co., 182 Mass. 171 (1902). By way of dicta, Chief Justice Holmes reasoned that a party, as long as it had already performed, could recover against the incipient corporation upon theories of continuing offer or implied contract. See Framingham Sav. Bank v. Szabo, 617 F.2d 897, 899 (1st Cir. 1980) (applying Massachusetts Law).
In the present case, both Copp and Hague understood the latter to be contracting on behalf of Modern. After its legal status was secured, Modern availed itself of all benefits of the contract with full knowledge of its terms. The contract is enforceable by and against Modern. Id. at 899-900. Compare Mansfield v. Lang, 293 Mass. 386, 390-391 (1936) (where the plaintiff had looked to the promoter rather than the corporation to carry out the agreement). The trial judge correctly found the contract to be a corporate obligation of Modern.
3. However, the fact that the contract was a corporate obligation would not per se necessarily release Hague from any liability. Albiani v. Loudd, 4 Mass. App. Ct. 165, 171 (1976). A promoter, like Hague, would be bound “unless the circumstances demonstrate [d] that the other party looked only to the corporation for performance.” Productora e Importadora de Papel, D.A. de C.V.v. Fleming, 376 Mass. 826, 836 (1978). The trial judge properly found such a demonstration in the reported facts herein. According to the reported evidence and contract documents, Copp and Hague intended to bind only Modern and not Hague. As Copp recognized the corporate existence of Modern and its sole liability on the contract, the plaintiff is estopped from denying it, as long as Modern exists and remains bound by the contract.[9] In Re David’s & Unique Eatery, 82 B.R. 652, 656-657 (Bkrtcy. D. Mass. 1987).
4. Modern’s defense was that it was excused from performance by the related concepts variously called frustration of commercial purpose, or impossibility or impracticability of performance, by reason of Copp’s illness three months after the contract and his death nearly two years later. “For that doctrine to apply, there must be ‘an unanticipated circumstance [which] has made performance of the promise vitally different from what should reasonably have been in the contemplation of both parties when they entered into the contract.’” Mishara Constr. Co. v. Transit-Mixed Concrete Corp., 365 Mass. 122, 129 (1974); Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass.App. Ct. 479, 485 (1988); Iodice v. Bradco Cleaners, Inc., supra at 57.
Where, after a contract is made, a party’s principal purpose is substantially frustrated without his fault by the occurrence of an event the nonoccurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate to the contrary.
Chase Precast Corp. v. John V. Paonessa Co., 409 Mass. 371, 375 (1991), quoting *14 from RESTATEMENT (SECOND) OF CONTRACTS, §261 (1981). On the subject of “Death or Incapacity of Person Necessary for Performance”, Section 262 of the RESTATEMENT (SECOND) OF CONTRACTS (1981) provides:
If the existence of a particular person is necessary for the performance of a duty, his death or such incapacity as makes performance impracticable is an event the nonoccurrence of which was a basic assumption on which the contract was made.
The Agreement and Promissory Note herein provided for the sale of all physical and legal assets of the business, as well as Copp’s non-competition, for the purchase price of $67,000.00. The Agreement also provided for the services of Copp for one year “at a salary to be mutually agreed upon.” In the absence of such an agreement, the salary would be the fair and reasonable value of Copp’s services. As noted, Hague estimates the value of a substitute for Copp to be $50,000.00.
As the record is devoid of evidence of any uniqueness of Copp’s services, his existence cannot be said to be necessary to Modern’s performance of the Agreement. Indeed, Modern Key Shop remains a going concert five years later. The reported evidence was insufficient to warrant the trial judge’s finding that Modern’s performance was excused by the “doctrine of frustration of purpose.”
The judgment for defendant Hague is affirmed. The judgment for defendant Modern is hereby vacated, and the matter is returned to the Lowell Division for a new trial on plaintiff’s claim against Modern.
So ordered.

Hhe defendants have not appealed the court’s findings against them on their counterclaims, which raised matters more appropriately treated as defenses to the complaint.

The plaintiff did not become a holder in due course of the note by taking over the estate. G.L.c. 106, §3-302(2) (b).

The Promissory Note does not include an acceleration clause. See Parker v. Russell, 133 Mass. 74, 76 (1882) (permitting recovery where anticipatory repudiation is accompanied by present breach).

Both the findings and the report are silent as to which defendant made the payments.

“[W]here the number of requests is palpably in excess of the number legitimately needed in a case, the trial judge has the power either to order them stricken from the files, or to require a party to reduce them to a reasonable number or risk the loss of any rights under them.” Stella v. Curtis, 348 Mass. 458, 460 (1965).

Findings of fact are ordinarily not required in civil actions tried in the District Court. Dist./Mun. Cts. R. Civ. R, Rule 52(a) and Rule 52(a) Comment. Neither is the court obliged to act on requests which present mixed questions of fact and law. Liberatore v. Framingham, 315 Mass. 538, 543-544 (1944); Crowinshield Shipbuilding Co. v. Jackman, 283 Mass. 21, 23 (1933); Iodice v. Bradco Cleaners, Inc., 1993 Mass. App. Div. 54, 46.
The plaintiff did not identify which of the requests were for rulings of law either in the trial court or in her brief to this Division. Plaintiffs counsel was also unable to do so in oral argument. “A solution to this difficulty is for parties in the District Court to draw their requests in such fashion as to indicate unmistakably whether they are asking the trial judge to made a finding or a ruling.” J.R. NOLAN, CIVIL PROCEDURE, §728 at 686 (2d ed. 1992).

This holding moots plaintiff’s appeal of the trial judge’s ruling that any debt of Hague to Copp was discharged in Hague’s 1990 “no assets” bankruptcy case in which Copp was not listed as a creditor. Apparently under the impression that he was not personally indebted, Hague moved in the Bankruptcy Court to reopen the case and add Copp’s estate as a creditor only after a motion to dismiss the instant case as to him was denied. The Bankruptcy Court denied the motion to reopen and amend. The Bankruptcy Court will not allow such a motion in a “no assets” case since it considers all debts discharged which are “dischargeable.” Whether the debt was dischargeable is a matter that may be resolved in an action on the debt in the state trial court. In Re Thibodeau, 136 B. R. 7 (Bkrtcy. D. Mass. 1992).