Greco, J.
Plaintiff Peter W. Clegg (“Clegg”) brought this action for, inter alia, *151 breach of contract, breach of fiduciary duty and G.L.c. 93A violations against the defendant-escrow agent to recover $18,575.34 he lost in an investment scheme involving the sale in the United States of tires manufactured in England from recycled rubber. After trial, judgment was entered for Clegg and the defendant has appealed pursuant to Dist/Mun. Cts. R. A. D. A, Rule 8C.
The investment scheme was the creation of Ecoterra limited (“Ecoterra" or the “Company"), a California corporation which planned to purchase remolded tires from an English manufacturer, Retreads International Ltd. (the “Manufacturer”), for resale to a network of dealers throughout the United States. To raise the advance funds needed for the purchase and shipment of the tires, Ecoterra executed an “Amended and Restated Escrow Agreement” with defendant Graham & Harsip, EC. (“Graham”), a law firm in Acton, Massachusetts, which provided for individual investments in the tire sale scheme. Each investor (called a “subscriber”) signed an addendum to the Escrow Agreement which called for his delivery of a sum of money to be initially held in escrow by Graham, and then to be paid by Graham to the Manufacturer upon instructions from Ecoterra for Ecoterra’s purchase of a single shipment or “container” of tires. Plaintiff Clegg was such a subscriber. When the American buyers (called “dealers”) received the tires, they were to send payment to Graham, which would in turn pay a “fee” to the subscriber from the sales proceeds. Presumably, the price paid by the dealers would also be sufficient to return a profit to Ecoterra. Neither the Manufacturer, nor the dealers, were parties to the Escrow Agreement, which essentially remained an arrangement between middlemen.
Paragraph 2(a) of the Escrow Agreement obligated Graham to transfer an individual subscriber’s funds to the Manufacturer for payment of a tire shipment upon receipt from Ecoterra of both a “Certificate of Acceptance” indicating that the goods had been inspected and were of satisfactory quality, and a “pro forma invoice.” Graham received a Certificate of Acceptance from Ecoterra in December, 1993 which listed the quantity and value of a container of tires, attested to their quality and readiness for shipment, referenced both Ecoterra’s purchase order and the Manufacturer’s pro forma invoice no. 2975, and authorized Graham to transfer the necessary funds for the purchase. Graham wired $18,495.20 of Clegg’s funds to the Manufacturer’s bank in England, and the fires were shipped. The tires proved defective, however, and the dealers returned them to England without paying for them. The Manufacturer never sent replacements and, consequently, the dealers never made any payments to Graham. Paragraph 2(i) of the Escrow Agreement expressly provided that if a subscriber sustained such a loss, Graham would “accrue funds that would otherwise belong to [Ecoterra] from the sales” funded by other subscribers until sufficient funds to cover the subscriber’s loss could be recouped. This procedure, however, proved to be of no assistance to Clegg once Ecoterra went into bankruptcy.
Without any contractual relationship with either the dealers or the Manufacturer and with Ecoterra in bankruptcy, Clegg sued the escrow agent to recover his loss on the grounds that if Graham had never sent his funds to the English Manufacturer, no loss would have been sustained. Clegg specifically charged that Graham violated paragraph 2(a) of the Escrow Agreement by transferring Clegg’s funds without first receiving the “pro forma invoice” from Ecoterra.
In an extensive memorandum of his findings and rulings, the trial judge concluded that Graham’s transfer of Clegg’s funds without the necessary documentation constituted a breach of contract and breach of fiduciary duty. The trial judge made findings for Graham on all remaining complaint counts, and did not address Graham’s counterclaim against Clegg for breach of contract. Judgment was entered for Clegg in the amount of $18,575.34. Graham has appealed the court’s denial of several of its requests for rulings, and the allowance of Clegg’s requests.
1. The trial judge’s finding that Graham breached the Escrow Agreement by trans *152 ferring funds without having first received the pro forma invoice was supported by the evidence. In his written findings, the judge then clearly articulated “the thought process which led to his decision.” Lynn v. Nashawaty, 12 Mass. App. Ct. 310, 315 (1981). See also Copp v. Hague, 1994 Mass. App. Div. 11, 12; Ledgemere Country Condominium Assn., Inc. v. Steckloff, 1991 Mass. App. Div. 25, 26. In finding for Clegg for breach of contract and breach of fiduciary duty, the judge concluded that Graham’s “failure to see that [the] conditions [set forth in paragraph 2 (a) ] were met created a foreseeable risk that subsequent events would lead to irreparable financial loss as... happened.” In so ruling, the judge effectively imposed strict liability upon Graham for his failure to comply with the pro forma invoice requirement of the Escrow Agreement Stated alternatively, the court determined that if Graham had not breached the Escrow Agreement this particular loss to Clegg resulting from the dealers’ refusal to pay for the tires would not have occurred. Graham has argued on this appeal that as a matter of law, there must be a more direct nexus between the violation of the Escrow Agreement and the loss sustained. We agree.
The established principle of law upon which damages for breach of contract may be assessed is that the injured party shall be placed in the same position he would have been in if the contract had been performed, so far as the loss may be ascertained to have followed as a natural consequence of the breach and to have been within the contemplation of the parties as reasonable men as a probable result of the breach.
Abrams v. Reynolds Metals Co., 340 Mass. 704, 708 (1960). See also International Totalizing Sys., Inc. v. PepsiCo, Inc., 29 Mass. App. Ct. 424, 430 (1990). Absent such consequential damages, a plaintiff would, at most, be entitled to only nominal damages for breach of contract See Newton Constr. Co. v. West & South Water Supply District of Acton, 326 Mass. 171, 175-176 (1950). Similarly, to establish negligence, Clegg was required to prove that Graham owed him a duty of care, that Graham breached that duty, and that the breach was the proximate cause of his injury. See Lowel-Light Mfg., Inc. v. Federal Deposit Ins. Corp., 848 F. Supp. 278, 281 (D. Mass. 1994), citing PROSSER & KEETON, THE LAW OFTORTS §30 (5th ed. 1985). Causation is an element of a claim for breach of a fiduciary duty. Meehan v. Shaughnessy, 404 Mass. 419, 439 (1989); Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 164 (1999). These general principles indicate that there must be a causal relationship between the escrow agents breach and the injury sustained, such that the breach at least increased the risk that the injury which did occur, would occur. Compare, by analogy, RESTATEMENT (SECOND) OF AGENCY §401, comment e (1958), which states:
[i]f an agent acts contrary to the principal’s orders..., and a loss to the principal results from such disobedience ..., the agent is subject to liability for such loss if the loss is within the risk created by the disobedience, even though the risk of loss is less than it would have been had the principal’s directions been followed [emphasis supplied].
In the instant case, the purpose of the pro forma invoice is not readily apparent. The evidence indicates that tibe parties entered into the subscription arrangement to assure the Manufacturer that it would receive payments from funds on hand before it shipped the tires to a different country. The Certificate of Acceptance from Ecoterra assured Graham that there was, in fact a container of tires ready for shipment and that the goods satisfied the required “quality standards.” The Certificate also referenced the Manufacturer’s invoice and Ecoterra’s purchase order, and designated the size and monetary value of the shipment. As Ecoterra was the immediate purchaser of the goods, presumably the pro forma invoice would have been a bill or request by the Manufacturer for payment from Ecoterra. Clegg testified that that was his interpretation of the required pro forma invoice. The document would thus have indicated only *153 that Ecoterra purchased a specific quantity of tires from the Manufacturer on a given date and at a certain price. That information, however, was never contested. Nor was there any evidence at trial that there was a discrepancy between the number of tires bought and shipped, and the number received for resale in the United States. There was also no dispute about the tires having in fact been shipped to, and received by, American dealers for resale. Indeed the parties’ only controversy arose from the dealers’ refusal to pay for the shipment in consequence of their determination that the tires were defective. The pro forma invoice would not have protected Clegg from this risk. Ironically, the only document, if any, which would have afforded such protection was the Certificate of Acceptance, which Graham did receive.
On the basis of this evidence, Clegg failed to satisfy his burden of establishing that Graham’s breach of the Escrow Agreement was the efficient cause of his loss. Even if Graham had received the pro forma invoice, the same risk would have existed that the dealers would ultimately fail to make payment and Clegg would lose his money. See McCann v. Davis, Malm & D’Agostine, 423 Mass. 558, 560-561 (1996) (jury would have been warranted in concluding that the plaintiff would have suffered his loss even if there had been no legal malpractice by the defendants). The evidence adduced at trial permitted no other conclusion. The sole protection against the loss Clegg sustained was Paragraph 2(i) of the Escrow Agreement, discussed above, which proved useless once Ecoterra went bankrupt. What happened in this case is analogous to the situation in Foley v. Carson, 349 P.2d 1056, 1057-1058 (Nev. 1960), where the escrow holder delivered funds before the required gaming license had been approved. Because the actions of the licensing authority had amounted to “an implied approval,” the Nevada court concluded that there was “substantial compliance with the escrow instructions” even though there was not “strict compliance.” As in this case, a crucial party in Foley (the hotel and casino) went bankrupt. The court’s conclusion that the investor’s loss “was solely the result of [his] unfortunate investment” would also apply to Clegg.
2. Given our conclusion that Clegg did not establish that Graham’s actions were the proximate cause of his loss, it is unnecessary to address the issue of whether Clegg’s claim for breach of fiduciary duty was barred by the statute of limitations. The trial judge entered a finding for Graham on all remaining counts, and Clegg has not appealed that portion of the judgment The trial judge never reached Graham’s counterclaim for breach of contract to recover from Clegg its expenses, including legal fees, incurred in defending this action. However, as the counterclaim is not discussed in the trial judge’s findings and as none of Graham’s Mass. R Civ. E, Rule 64A requests for rulings of law addressed its counterclaim, nothing is presented to us on appeal. See generally Mark Moore Homes, Inc. v. Tarvezian, 1998 Mass. App. Div. 171, 172; Sundex, Ltd. v. Antifonario, 1997 Mass. App. Div. 187, 188. In any event, it would not appear that the counterclaim rested on any legal foundation. Nothing signed by the parties gave the escrow agent the right to recover against a subscriber. To the contrary, Paragraph 7 of the Escrow Agreement stated that the Graham would be compensated by Ecoterra “for all costs and expenses occasioned by... litigation.”
Accordingly, the trial court’s judgment for the plaintiff is vacated. Judgment is to be entered for plaintiff Clegg on his breach of contract claim, but we see “no useful purpose” in returning this case to the Concord Division for the assessment and award of the merely “symbolic” nominal damages to which Clegg may be entitled. St. Charles v. Kender, 38 Mass. App. Ct. 155, 161 (1995). Therefore, the trial court clerk shall enter judgment for plaintiff Clegg for nominal damages in the amount of $1.00. Judgment is also to be entered for defendant Graham & Harsip, P.C., on all remaining complaint counts.
So ordered.