Greco, J.
This is a summary process action in which a judgment for possession of commercial premises was entered for the plaintiff-landlord, Louis M. Saab (“Saab”). Pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8C, Saab now appeals the trial court’s failure to award him damages for past rent and utility charges allegedly due. He contends that the trial judge erred in (1) applying the doctrine of frustration of purpose so as to relieve the tenant of its obligations for unpaid rent and utilities, and (2) failing to act on his requests for rulings of law.
Much of the evidence at trial was undisputed. In December, 1996, Saab leased to defendant Norton Family, Inc. (“Norton”) the fourth floor of a building in Lowell, Massachusetts for a monthly rent of $3,200.00, plus charges for electricity and other utilities. The parties’ written “Commercial Lease Agreement” (the “Lease”) expressly provided that Norton was to “use the leased premises only for the purpose of running a Restaurant [and] serving liquor. ...” The Lease further prohibited Norton from making any “structural alterations or additions” to the premises. Norton was required, upon termination of the lease, to remove all its “goods and effects” from the premises.
As had Saab’s previous tenant, Norton opened a restaurant on the premises (“City View”) and operated it for almost two years. In December, 1998, there was a fire which led to an inspection of the premises by the Building Commissioner of Lowell. The Building Commissioner determined that the premises were in violation of the State Building Code in that the building had been designed and constructed for office space only, was structurally inadequate to support the weight of a restaurant on the fourth floor, and lacked the necessary fire protection ratings for the building’s structural elements to permit such a use of the premises. When an occupancy permit was not issued, the restaurant’s liquor and common vict-ualer’s licenses were revoked. The restaurant was thus effectively shut down on April 27,1999.
What transpired thereafter was the subject of conflicting testimony at trial. On the one hand, there was evidence that upon the restaurant’s closing, Norton decided not to pay its rent, using that money instead to challenge the action of the Building Commissioner in Superior Court. Although Norton informed Saab of his intent to take this course of action, Saab neither approved, nor disapproved, of the plan. After the Superior Court action failed, Norton still did nothing to terminate the lease officially, and kept its restaurant equipment on the leased premises. When no rent was forthcoming, Saab commenced this summary process action on July 30, 1999. Saab testified that he did not gain access to the premises until September 3,1999, when he found the premises unlocked. Espousing this view of the evidence, Saab maintains that Norton remained obligated for the rent and util *201 ity charges from May through August.
On the other hand, the evidence would have warranted a finding that once the necessary licenses were revoked, Norton promptly vacated the premises, informed Saab of its plan to contest the matter in court, and requested the Massachusetts Electric Company to terminate all electric service, a request with which the Electric Company failed to comply. Norton left its equipment behind because liens had been placed on it and Norton was instructed to do so by the bank-lien-holder, and because Saab was considering buying the equipment. Moreover, realizing that Norton had vacated the premises, Saab, himself, changed the locks and had access to the premises well prior to September 3, 1999.[1] Norton argues that under these circumstances, it was justified in terminating the lease, acted reasonably and promptly to do so, and owes Saab nothing.
In entering judgment for Norton on Saab’s claim for unpaid rent and utility charges, the trial judge made the following findings and rulings:
The lease provides that the premises can only be used as a restaurant. The building commissioner determined that the premises did not permit such a use. All licenses required to operate a restaurant were rescinded. The lessee notified the lessor promptly of the situation. Accordingly, the lessee has no obligation to pay any money to the lessor after April 30, 1999. The doctrine of ‘frustration of purpose’ is applicable. All rent and utilities were paid through April by the lessee.
There was no error.
1. The trial court’s application of the doctrine of “frustration of purpose” was clearly warranted to the extent that it permitted Norton to terminate its obligations under the parties’ Lease. ‘The concept of commercial frustration of purpose in this Commonwealth is considered a ‘companion rule’ to the doctrine of impossibility of performance, and ‘nearly identical to the defense of commercial impracticability found in the Uniform Commercial Code, G.L.c. 106, §2-615.’” Iodice v. Bradco Cleaners, Inc., 1993 Mass. App. Div. 54, 56, quoting from Chase Precast Corp. v. John J. Paonessa Co., 409 Mass. 371, 374-375 (1991). All three commercial defenses recognize that:
[wjhere, after a contract is made, a party’s principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate to the contrary.
Chase Precast Corp. at 375, quoting from RESTATEMENT (SECOND) OF CONTRACTS §265 (1981). See also Copp v. Modern Key Shop, Inc., 1995 Mass. App. Div. 13, 14.
“Under frustration, performance remains possible but the expected value of performance to the party seeking to be excused has been destroyed by the fortuitous event....” Chase Precast Corp., supra at 374. In this case, it was physically possible for Norton to remain in possession and continue to pay rent, but it would have received no value in return because it could not do the one and only thing for which it had leased the premises and which it was permitted to do under the Lease; namely, operate a restaurant. Arguably, the premises could have been *202 brought into compliance with the Building Code, but that would have required Norton to make structural changes to the premises, something which the Lease expressly prohibited Norton from doing. Under these circumstances, performance may well have been rendered impossible, not merely frustrated. Moreover, not even under the view of the evidence espoused by Saab could it be said that the risk of the restaurant being shut down in this way was allocated to Norton. See Mishara Constr. Co. v. Transit-Mixed Concrete Corp., 365 Mass. 122, 127, 129-130 (1974). The Lease was silent on this issue. The provision wherein Norton acknowledged that no unlawful trade would be conducted on the premises was inapposite. To say otherwise would mean that Saab was requiring Norton to operate a restaurant where it could not be done legally, while at the same time precluding Norton from remedying the illegality.
2. Saab also charges the trial court with error in its failure to rule on his requests for rulings of law. In awarding possession to Saab, the trial judge stated that Saab’s requests for rulings were “deemed waived,” and noted, parenthetically, that the number submitted (22) was “excessive.”
The court’s finding in favor of Saab on his claim for possession did not relieve the court of the obligation to rule on those requests pertaining to Saab’s additional claim for unpaid rent and utilities, on which the court found in favor of Norton. See Mass. R. Civ. P., Rule 64A(c) (2).
[Wjhen a judgment does not incorporate a favorable disposition of all of the prevailing party’s claims, as in the instant case, judicial inaction upon requests for rulings pertaining to those claims or to questions of damages is inappropriate.
Mishara v. Bankers Marketing Services, Inc., 1989 Mass. App. Div. 193, 195. See also Locke v. Austin, 1999 Mass. App. Div. 257, 258-259 and cases cited. Moreover, even if the trial judge was primarily concerned with the excessive number of the requests, an assessment with which we are inclined to agree, he should have ordered Saab “to refashion and reduce the number as a condition precedent to [the judge’s] passing upon any of them.” Green v. Blue Cross & Blue Shield of Mass., Inc., 1996 Mass. App. Div. 165, 169, quoting from Stella v. Curtis, 348 Mass. 458, 461 (1965). See also Chiappetta v. Lyons, 1999 Mass. App. Div. 276, 278 (court’s order striking all thirty-five requests filed was “unduly harsh and constituted an abuse of discretion.”).
For purposes of appellate review, the court’s inaction on Saab’s requests for rulings must be treated as a denial of the requests. Mass. R. Civ. P., Rule 64A(c). See also The Lenco Pro, Inc. v. Guerin, 1998 Mass. App. Div. 10, 12 and cases cited. So considered, there was no reversible error because Saab was not entitled to the allowance of any of the twenty-two requests he filed. Seven of the requests (nos. 6, 11-13, 17, 20 and 22) consisted of verbatim quotations from factually inapposite cases or set forth legal propositions tied to the specific facts of the cited cases, and would have been properly denied as inapplicable to this case.[2] Ro-Bar Realty, Inc. v. Warren Five Cents Sav. Bank, 1981 Mass. App. Div. 181, 182. Four requests (nos. *203 10 and 14-16) sought rulings on matters not in issue.[3] See Herman v. Sadolf, 294 Mass. 358, 362-363 (1936). Request number 3 improperly posited a mixed question of law and fact.[4] See Liberatore v. Framingham, 315 Mass. 538, 543-544 (1944); Malloy v. Massachusetts Mortg. Corp., 1998 Mass. App. Div. 3, 5. Five of the requests (nos. 4, 5, 7, 8 and 21) were inconsistent with, and rendered immaterial by, the judge’s voluntary findings, see Ward v. James, 1999 Mass. App. Div. 208, 209, which “fully articulated” his reasoning on the aspects of the case addressed by those requests.[5] See Lynn v. Nashawaty, 12 Mass. App. Ct. 310, 315 (1981). See also Cobb v. Hague, 1994 Mass. App. Div. 11, 12. The remaining four requests (nos. 2, 9,18 and 19) dealt with the issue of whether the failure of the Building Commissioner to issue an occupancy permit and the revocation of the licenses were risks allocated to Norton. While the trial judge did not specifically address this issue, the Lease clause relied upon by Saab did not, as a matter of law, allocate the risk to Norton. These requests would have been properly denied.[6] Appeal dismissed.
So ordered.

 Saab sought damages herein for rent from May through August, 1999. It was disclosed at trial, however, that Saab continues to hold Norton’s last month’s rent, which was paid in advance at the commencement of the lease term, plus Norton’s month’s security deposit.

 For example, request number 11 stated: “Where a plaintiff could not obtain the governmental license needed to operate a steam boiler to aid the crushing of rocks, the plaintiff is liable on the contract to the landlord/defendant where the said landlord/defendant was not responsible for the plaintiffs inability to obtain the relevant license. See McDonough v. Almy, 218 Mass. 409 (1914). Although the contractor apparently could have performed this work in a manner so as not to violate the relevant city ordinance, the legal principals [sic] still apply as to who should bear the loss.”

 For example, request number 15 stated: “Even if the landlord made alleged oral representations that the premises were suitable for the lessees’ commercial purposes, those alleged warranties would have been superseded by the unambiguous provisions of an integrated written agreement. See Buker v. Nat’l Mgm. Corp., 16 Mass. App. Ct. 36 (1983).”

 Request number 3 stated: ‘The defendant’s failure to turn over the keys to the relevant premises until on or about September 16, 1999 validates the plaintiffs claim for past due rent in the sum of $18,000.00, representing $3,600.00 per month from May 1,1999 to September 1,1999.”

 For example, request number 5 stated: “As a matter of law, the defendant has no valid defense to the Complaint and Summons of the plaintiff in this lawsuit.”

 For example, request number 18 stated: “Where a risk is anticipated and assigned, the defense of impossibility of performance will not lie. See, e.g., Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass. App. Ct. 479, 485 (1988).”