Greco, J.
Dr. Ian J. Boehm (“Boehm”), a chiropractor, alleged that the defendant insurance company (“Premier”) violated the Consumer Protection Act, G.L.c. 93A, by committing an unfair settlement practice in violation of G.L.c. 176D, §3(9) in failing to make timely payments of personal injury protection (“PIP”) benefits under G.L.c. 90, §34M. On appeal, Boehm assigns as error the denial of various requests for rulings of law he filed.
Diane LeBlanc (“LeBlanc”), Boehm’s patient and Premier’s insured, had two accidents in fairly quick succession; the first one occurred on March 15,1999 and the second on April 19, 1999. The processing of insurance claims for these accidents overlapped during the ensuing two years.
As to the first accident, the following was undisputed: After the March 19,1999 accident, LeBlanc submitted a PIP application to Premier on which she noted that she did not have health insurance. She underwent an independent medical examination (“IME”) on May 11,1999, the results of which were furnished to Premier on May 20, 1999. Premier timely paid whatever bills Boehm submitted for his treatment of LeBlanc on this claim until $2,000.00 was paid; i.e., until Premier paid the limit which applies to someone who has health insurance. At that point, specifically on July 14, 1999, Boehm was seeking further payment in the amount of $345.75. Even though LeBlanc had previously indicated that she did not have health insurance, Premier required her to submit an affidavit to that effect, which she did on August 4,1999. Premier paid the remaining bill for $345.75 on November 17,1999. Although the record does not disclose when Boehm retained counsel, a complaint was not filed in this matter until June 5, 2000. That two-page complaint sought PIP payments related only to the second accident. However, in November of 2001, Boehm’s counsel filed an amended complaint which added claims relating to the $345.75 bill paid two years earlier.[1]
While the trial of this case focused more on the PIP benefits related to the second accident, there was some testimony about the earlier claim. Specifically, the supervisor of Premier’s PIP unit testified that even though LeBlanc had noted on her application that she did not have health insurance, it was Premier’s company policy to require submission of an affidavit as to lack of health insurance. Boehm testified that because he was concerned that Premier had “overlooked” the last *54 payment of $345.75 after LeBlanc’s affidavit was submitted, he brought it to Premier’s attention in writing. Payment was made five days later. The supervisor also testified at trial that the outstanding balance was paid as soon as Premier received Boehm’s reminder, and that she assumed the failure to make payment earlier was “just an oversight.”
As to the second accident, it was undisputed that LeBlanc submitted a PIP application for medical expenses related to that accident on April 29, 1999. She again indicated that she did not have health insurance. Boehm’s bills for treatment he provided to LeBlanc during the month of June relating to the second accident totaled $990.00. Premier paid those bills within three days of receipt.[2] In September, 1999, Boehm submitted bills totaling $450.00 to Premier for services provided to LeBlanc in July. In November, Boehm submitted additional bills for services rendered from August 22 through October 22,1999, which totaled $650.00. These bills were not paid and were the subject matter of the complaint initially filed in this case on June 5,2000. After suit was filed, on August 21,2001, Boehm rejected Premier’s offer to pay $1,000.00. A second offer made shortly thereafter in the amount of $1,600.00 was also rejected. A week later, on October 16, 2001, Premier paid Boehm $1,100.00.
There was considerable testimony at trial as to why Premier initially failed to pay the bills totaling $1,100.00, why it made offers of $1,000.00 and $1,600.00, and why it then paid Boehm $1,100.00. The trial judge made extensive findings of fact on all these questions which we find were supported by the evidence. As discussed below, it is sufficient for purposes of this appeal simply to outline the judge’s findings rather than summarize the trial testimony in its entirety. The judge found that when Boehm met with LeBlanc on April 26, 1999, seven days after the second accident, she reported that she had been in another accident in which “she struck her head, left shoulder and arm against the steering wheel. In addition to the areas of pain she had previously described in connection with [the first] accident, she also complained of pain in her knee.”[3] The doctor who performed the IME on May 11,1999 concluded that for the injuries LeBlanc suffered in the first accident, only four to six additional weeks of treatment, entailing ten to twelve visits with a chiropractor, would be of benefit. The doctor also concluded that LeBlanc’s knee injury was related to the second accident and that she would continue to be disabled for the same four to six weeks as a result of that injury. Based on the IME report, Premier notified LeBlanc’s counsel that it would pay for only ten to twelve additional chiropractic sessions. Although Boehm thereafter reported that LeBlanc’s back pain worsened, she made no mention of such pain to an orthopedic surgeon she saw during this same general time frame. Relying on the IME report, Premier refused to pay for treatment from July 1,1999 to July 23, 1999. When Boehm sought payment for treatment rendered from August 22,1999 to October 22, 1999, Premier asked the doctor who had performed the IME to review the bills. When that doctor saw nothing to warrant a modification of his earlier opinions, Premier also refused to pay the additional bills. As noted above, the total amount of the unpaid bills was $1,100.00.
Based upon the above findings, the trial judge first ruled that not every violation of G.Lc. 90, §34M would constitute a violation of Chapter 93A, but that an insurance company’s failure to pay PIP benefits “[o]nce the obligation is clear and undisputed” would amount to a violation. Noting that “[pjarties settle matters for a myriad of reasons” such as “the cost of litigation,” the judge further ruled that Premier’s decision *55 to pay the $1,100.00 was not an admission that the bills involved were reasonable and necessary. The judge concluded that “[i]n this instance, there was a triable issue as to whether all of the treatment was necessary and reasonable," and that Boehm “failed to demonstrate by the preponderance of the evidence that it was unreasonable to rely on” the reports of the doctor who performed the IME.
From the appellant’s sometimes incomprehensible (and at other times, outright bizarre) brief, it is difficult to discern the precise grounds of this appeal. In his notice of appeal, Boehm appears to have asserted as error the denial of sixteen of his requests for rulings of law. In his brief, however, he reduced the rulings appealed to four (numbers 13, 21, 22 and 23). The last three of these sought rulings that either the evidence warranted a finding for Boehm or did not warrant a finding for Premier. While there is nothing unusual about Mass. R. Civ. P., Rule 64A(b), requests, Boehm’s requests referred to “the claim stated in count 1 of the ‘Agreed Statement of the Case’ submitted by the parties at trial.” That reference appears to restrict the three requested rulings to the $345.75 amount sought in relation to the first accident. In view of his brief and oral argument, we do not think that counsel meant to so restrict the three requests. Instead, we assume that he intended these requests to test the sufficiency of the evidence as it related to the claims arising out of both accidents.
In request number 13, Boehm sought a ruling that when an insurance company fails to make timely payment of PIP benefits after “receipt of reasonable proof of the fact and amount of expenses and reasonable proof that the injured party did not have health insurance, it has committed an unfair or deceptive act or practice” in violation of G.Lc. 93A. Thus, Boehm sought a ruling that a violation of G.Lc. 90, §34M is, per se, a violation of G.L.c. 93A It is not. Since Premier paid the claims before the case went to trial, there was no violation of §34M. See Fascione v. CNA Ins. Co., 435 Mass. 88, 94 (2001). The Supreme Judicial Court noted in Fascione, however, that even if payment was made, the underlying conduct of the insurance company may give rise to a Chapter 93A claim based on a violation of G.Lc. 176D. Section 3 (9) (b) of Chapter 176D provides that it is an unfair claim settlement practice for an insurer to fail “to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,” which is what Boehm essentially alleges here. However, a claim under G.L.c. 93A, §11 by a business entity such as “Ian Boehm, D.C.” would not be on the same footing as a claim by a consumer (such as the insured in a PIP case). Applying what was said in Transamerica Ins. Group v. Turner Construction Co., 33 Mass. App. Ct. 446 (1992) to the case at bar,
[t]o the extent that [Boehm] thinks that unfair settlement actions under ... §3(9) lay a foundation for an action under G.L.c. 93A, §11, it is mistaken. A person whose rights are affected by a violation of... §3(9) has a right of action under G.L.c. 93A, §9, but by express language in §9(1), that right does not inhere in a person entitled to bring action under G.L.c. 93A, §11; i.e., a business against business 93A claim does not lie for violation of G.L.c. 176D, §3(9).
Id. at 452. See also Adams v. Liberty Mut. Ins. Co., 60 Mass. App. Ct. 55, 63 n.14 (2003). The resolution of Boehm’s G.Lc. 93A claim, “including the issue of bad faith ... depend [ed] on a factual determination of the defendant’s knowledge and intent[,]” O’Leary-Alison v. Metropolitan Prop. & Cas. Ins. Co., 52 Mass. App. Ct. 214, 217 (2001), not merely on whether there was a prompt settlement after liability had become reasonably clear. See also Sonogram of New England, Inc. v. Plymouth Rock Assurance Corp., 2003 Mass. App. Div. 82, 83.
Boehm’s remaining requests sought rulings either that the evidence was sufficient to warrant a finding for Boehm or was insufficient to warrant a finding for Premier. As to the latter so-called “negative warrant” requests, there was no error. Since Boehm *56 had the burden of proof, “it could not be ruled as a matter of law that the court could not have found for the defendant” Frank E. Salafia, D. C. v. Trust Ins. Co., 2000 Mass. App. Div. 242, 244. There was also no error in the denial of the “warrant’ requests as they related to the first accident There was no dispute that the money was paid, albeit sevenly-five days late.[4] However, it was also undisputed that during this time period, Premier paid Boehm $990.00 for services he provided to LeBlanc that were related to the second accident; that once Boehm brought the non-payment to Premier’s attention, the payment was made in five days; and that when Boehm’s initial complaint was filed two years later, it did not even mention the $345.75 bill. Moreover, there was “nothing in the record to show that any delay in responding to the plaintiff’s claim was the result of bad faith or ulterior motives.” See Doe v. Liberty Mut. Ins. Co., 423 Mass. 366, 372 (1996) (where the Supreme Judicial Court concluded that “no adequate basis exist[ed] to warrant a finding of unreasonableness” even though the insurance company’s “failure to respond to only one claim letter ... caused a six-month delay in the disposing of the claim.”). If anything, the record shows the lack of bad faith or ulterior motives. Premier’s continued payment of Boehm’s bills related to the second accident is inconsistent with the existence of any bad faith or ulterior motive. Moreover, Boehm testified that his reminder to Premier about the unpaid bill was out of a concern that it had “overlooked” the matter. This was consistent with the testimony of the supervisor of Premier’s PIP unit that the nonpayment was “just an oversight” In these circumstances, a finding of a violation of G.Lc. 93A would not have passed legal muster.
While it could not be ruled as a matter of law that the evidence would not have warranted a finding for Boehm on his bills related to the second accident, there was no prejudicial error in the denial of Boehm’s requested ruling. “[I]t has long been held that error in the denial of a warrant request does not require reversal if the judge made findings demonstrating that his or her decision was properly based on an assessment of the weight and credibility of the evidence rather than on a legal determination that the evidence was insufficient to permit a finding in favor of the requesting party.” Green v. Blue Cross & Blue Shield of Mass., Inc., 1996 Mass. App. Div. 165, 169. See also Saab v. Norton Family, Inc., 2000 Mass. App. Div. 200, 203. Such was the case here. The trial judge made detailed findings of fact which were supported by the evidence. He specifically noted that “there was a triable issue as to whether all of the treatment [provided by Boehm] was necessary and reasonable,” thereby negating any view on his part that, as a matter of law, Boehm could not prevail. However, he concluded that Boehm “failed to demonstrate by the preponderance of the evidence that it was unreasonable for Premier to rely” on the reports by the doctor who performed the IME to reach the conclusion that the treatment related to the unpaid bills was not reasonable and necessary. The judge thus applied the correct rule of law. See O'Leary-Alison, supra at 217. The trial judge also considered, but attached no significance to, Premier’s decisions to make offers in settlement and then to pay the outstanding bills, in effect finding it was a business decision based on the “cost of litigation.” In these circumstances, the denials of the warrant requests pertaining to the second accident were rendered meaningless by the judge’s proper findings of fact.
Judgment affirmed.
So ordered.

 The complaint amendment may have been a reaction to Fascione v. CAM Ins. Co., 435 Mass. 88 (2001). In any event, Boehm’s initial two-page complaint became a twenty-six page, forty-six count complaint.

 Thus, Boehm received this payment from Premier while he was awaiting payment for the $345.75 in bills related to the first accident.

 Unless otherwise indicated, these quotations are from the trial judge’s findings, not the testimony.

 Under G.L.c. 90, §34M, payment was due thirty days after LeBlanc supplied her affidavit indicating she had no health insurance; i.e., by September 4, 1999. Payment was made on November 17,1999.