Brant, J.
Summary judgment was entered for defendant Hanover Insurance Company (“Hanover”) in two consolidated cases brought by plaintiff Frank E. Salafia (“Salafia”) to recover Personal Injury Protection (“PIP”) benefits for chiropractic services he provided. Salafia appealed.
The parties stipulated to the relevant facts. Salafia and an associate provided chiropractic services to two patients, Maribel Hernandez (“Hernandez”) and Peter Ventura (“Ventura”), who were injured in a motor vehicle accident on November 13, 2002 while riding as passengers in a vehicle insured by Hanover. Hernandez and Ventura were both employed by the Sterilite Corporation, and were participants in the Sterilite Corporation Welfare Benefit Plan (the “Sterilite Plan”), a self-funded health plan that provided medical benefits for Sterilite employees. The Sterilite Plan was organized under the Federal Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. §1001 et seq., and was administered by United Healthcare. Salafia was a member of the United Healthcare Select EPO provider network because he had a contract with the American Chiropractic Network which had been purchased by United Healthcare. Salafia had no direct contract with the Sterilite Plan.
Salafia filed a PIP claim with Hanover for the medical services provided to Ven-tura and Hernandez. The parties do not dispute the necessity of the services rendered, or the reasonableness of the bills Salafia submitted. Because Ventura and Hernandez had health insurance under the Sterilite Plan, Hanover limited its PIP payments to Salafia to $2,000.00 as provided in G.L.c. 90, §34A. Salafia submitted the remainder of his bills to the Sterilite Plan, which paid some, but not all, of Sala-fia’s charges in accordance with the limitations of his United Healthcare provider agreement. Salafia then turned back to Hanover seeking PIP benefits for those charges disallowed under the Sterilite Plan. Hanover refused to make additional PIP payments, and Salafia commenced this suit against Hanover to recover $4,368.70 in unpaid bills for the treatment of Ventura and Hernandez. The parties filed cross-motions for summary judgment. The trial court denied Salafia’s Mass. R. Civ. R, Rule 56, motion, and entered summary judgment for Hanover.
It is undisputed that G.L.c. 90, §34A required prompt payment by Hanover for any “necessary medical, surgical, x-ray and dental services” provided to Ventura and Hernandez. See Boehm v. Premier Ins. Co., 2006 Mass. App. Div. 53, 55; Salafia v. Arbella Mut. Ins. Co., 2002 Mass. App. Div. 165, 166. The no-fault insurance scheme was designed to provide an expeditious and inexpensive method of reimbursing injured parties for their medical and other out-of-pocket expenses as well as to reduce the high costs of motor vehicle accidents. Dominguez v. Liberty Mut. Ins. Co., 429 Mass. 112, 115 (1999). The statute provides that the PIP carrier will *189 pay for the first $2,000.00 of medical treatment for an insured or claimant who has medical coverage. Section 34A of G.L.C. 90 “expressly limits PIP payments for medical expenses to $2,000.00 in cases where such expenses have been or will be paid under a health insurance policy.” Shah v. Liberty Mut. Ins. Co., 56 Mass. App. Ct. 903, 904 (2002) ,[1]
Salafia seeks payment from Hanover under that portion of the statute that makes the PIP carrier responsible for up to $6,000.00 in coverage after the initial $2,000.00 PIP payment is made if the injured person’s health insurance coverage does not apply. Creswell v. Medical West Community Health Plan, Inc., 419 Mass. 327, 330 (1995). Such a claim will fail, however, if health insurance exists and the PIP claimant is actually seeking, as in this case, to avoid health insurance plan restrictions on balance billing. Rivera v. Trust Ins. Co., 1999 Mass. App. Div. 218, 219.[2]
Salafia attempts to avoid the effect of the provider billing restrictions which limited payment by the Sterilite Plan by arguing that ERISA preempts state law. He points specifically to language in the Sterilite Plan providing that primary coverage will be paid as if secondary coverage does not exist. It is true that ERISA preempts state regulation of employee insurance plans for medical and retirement benefits. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990). “Congress intended ERISA to supersede all state laws that relate to employee benefits plans[,]” Udell v. Georgia Boy Mfg., Inc., 174 Mich. App. 171, 175 (1988), and preemption thus applies if the state law has any “connection with or reference to” an employee benefit plan. Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96-97 (1983).
The initial problem with Salafia’s position is that he lacks standing to argue that ERISA preempts the PIP statutory scheme. Generally, the person bringing the suit must be asserting the rights of the ERISA plan in order to have standing. Danowski v. United States, 924 F. Supp. 661, 672 (D.N.J. 1996). Even with an assignment of claims from the patients, Salafia lacks standing to raise an ERISA preemption claim. Such a right would exist for the Sterilite Plan, but it chose to pay some of the bills for services Salafia provided.
Second, even if Salafia had standing, it is clear that there is no ERISA preemption here. The PIP statute is not one which relates to an employee benefit plan. See Fisher v. Government Employees Ins. Co., 762 A.2d 35, 39-40 (D.C. 2000); American Medical Sec. Inc. v. Allstate Ins. Co., 235 Mich. App. 301, 304-305 (1999). Further, the “powers of the States were not to be superseded by the Federal Act *190 unless that was the clear and manifest purpose of Congress.” Rice v. Santa Fe Elev. Corp., 331 U.S. 218, 220 (1947). Preemption of a state statute is a rare occurrence, and there is nothing before us to indicate any ERISA preemption of the PIP statute.[3] Attorney General v. Brown, 400 Mass. 826, 829 (1987).
Given the absence of any preemption, Salafia is not entitled to PIP benefits for the balance of his bills disallowed by the Sterilite Plan pursuant to his provider agreement. Shah v. Liberty Mut. Ins. Co., supra, at 904.
Judgment for the defendant is affirmed. Appeal dismissed.
So ordered.

 The Court stated that “[t]he purpose of coordinating benefits in this fashion is two-fold: to leave the remaining $6,000 in PIP benefits available to be paid for lost wages, replacement services, and additional medical costs not covered by the health insurer, thereby maximizing the insured’s benefits under his policies (citations omitted), and to contain the costs of compulsory automobile insurance by allocating medical expenses above $2,000 to available health insurance.” Id. at 904.

 In Shah v. Liberty Mut. Ins. Co., the plaintiff had, like Salafia, signed a medical provider agreement with a health insurance carrier (Blue Cross/Blue Shield) which precluded billing for the balance of the plaintiff’s charges in excess of the amounts allowed under the provider agreement. In rejecting Shah’s §34A claim for PIP payments for the balance of her bills, the Court stated: “Although Shah maintains that the unpaid portion of her bill should be treated as an additional medical expense that was not covered by BCBS and was therefore payable under PIP, treating the balance of her bill as an uncovered medical expense would thwart both purposes of the coordination of benefits provision. Requiring [the PIP provider] to pay the balance of Shah’s bill would reduce the amount of PIP coverage available to Ithe insured].... It also would burden the PIP carrier with a medical payment that Shah -willingly agreed to forego in return for her access to BCBS patients.” Shah, supra, at 904.

 It may be noted that if Federal preemption were operative here, it would have had the effect of removing state regulatory authority from the entire no-fault insurance area. “A claim of ERISA preemption in a State court is tantamount to a challenge to that court’s subject matter jurisdiction.” Ritter v. Massachusetts Cas. Ins. Co., 439 Mass. 214, 217 (2003). Thus, if Salafia had succeeded on his preemption claim, there would have been “nothing to adjudicate” in this action. Id. at 216.